UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ronnie L. MOODY, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>  Defendants. | Case No.: 18-cv-1110-WQH-AGS<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 18)** |

Four state inmates claim they were attacked by prison guards. They sued the guards, the warden, and the state prison agency for excessive force and a host of ancillary claims. Defendants now move to dismiss much of the complaint.

## **BACKGROUND**[1]

On July 17, 2017, the four plaintiffs—Ronnie Moody, Gary Deans, Billy Williams, and Donnel Jones—were incarcerated in the same unit at Richard J. Donovan Correctional Facility. (ECF No. 1, at 4-5 ¶¶23-24.) Things went awry when a counselor kicked Moody's

---

[1] As required at this early stage, this Court accepts "all factual allegations in the complaint as true and constru[es] them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016).

1

feet for blocking his way and a fight ensued. In a clumsy attempt to subdue Moody, a tower guard fired a "block gun" at him, but missed the mark and struck the counselor's face, breaking his nose. (*Id*. at 5 ¶¶34-36.) Finally, an alarm sounded, summoning a flood of guards with better aim. The officers shot Moody—successfully, this time—with a block gun, pepper-sprayed his face, beat him with batons, handcuffed him behind his back, and left him lying facedown and motionless on the ground. (*Id*. at 5-6 ¶¶37-42.) Then, for good measure, a prison supervisor kicked Moody in the face, prompting dozens of other guards to join in, beating the defenseless inmate into unconsciousness. (*Id*. at 6 ¶¶43-47.)

Meanwhile, Moody's fellow prisoners protested his beating, yelling, "Stop!," "You're going to kill him!," and "He's in cuffs!" Plaintiff Williams screamed at the guards, "I'm going to report you all!" (ECF No. 1, at 6-7 ¶¶50-51, 59.) The officers stepped outside the unit for a brief, private meeting. During this "huddle-up," they planned "how they would threaten and attack the prisoners" to deter them from reporting the incident. (*Id*. at 7 ¶¶60-62.) The guards soon returned to the unit to assault the other three plaintiffs. Plaintiff Deans, "who walks with the aid of a cane," and plaintiff Williams were both punched in the face, without cause. And plaintiff Jones was tackled from behind and manhandled until his right arm broke. (*Id*. at 7-9 ¶¶65-85.)

In the lawsuit that followed, plaintiffs allege that the guards involved in the July 17, 2017 incident are members of the "Green Wall," a "Mafia-like prison gang of correctional officers" engaged in violence and other crimes against inmates. (ECF No. 1, at 4 ¶¶19-22.)

**DISCUSSION**

To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also* Fed. R. Civ. P. 12(b)(6). But "naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (citation and internal punctuation omitted).

2

A.  **Claims Against Defendant Paramo**

Defendants move to dismiss all claims against Warden Daniel Paramo in his official capacity, arguing that Eleventh Amendment sovereign immunity bars any money damages and that plaintiffs fail to state a claim for any equitable relief. "The Eleventh Amendment bars suits for money damages in federal court against . . . state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). But "it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

1. *Money Damages*

Plaintiffs do not seek money damages from Warden Paramo (*see* ECF No. 1, at 22 ¶3), so the motion to dismiss damages claims against Paramo should be denied as moot.

2. *Injunctive Relief*

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Supervisors are liable only if: (1) they are "personally involved in the constitutional deprivation," or (2) they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Id*. (quotation marks omitted). Such a "policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official to take any remedial steps after the violations." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quotation marks omitted).

Here plaintiffs allege that Warden Paramo knowingly oversaw a prison with unconstitutional policies or customs, in that he: (1) "accepts or acquiesces in a pervasive culture of violence against prisoners" at Donovan Correctional Facility, including the existence of the "Green Wall"; (2) "is and has been aware of the illegal activities of the members of the Green Wall but has failed and refused to take action against them"; and (3) "reviewed or was aware of numerous inmate grievances, learned of ongoing violations

of inmates' rights by his subordinates, and failed to take corrective action, thereby allowing those violations to continue." (ECF No. 1, at 3-4.)

The Ninth Circuit has repeatedly authorized equitable relief for supervisors who turn a blind eye to constitutional violations, as Paramo allegedly did here. *See, e.g.*, *Gomez*, 255 F.3d at 1127 (finding a policy or custom that warranted supervisory liability based on "failure to investigate the retaliation complaints, the lack of reprimand or discipline for the officers involved even when their supervisors were aware of the complaints, and the delegation of investigation to officers involved in the grievances"); *Larez v. City of L.A.*, 946 F.2d 630, 647 (9th Cir. 1991) (finding evidence of a policy or custom of excessive force based on police chief's failure "to take any remedial steps after the violations").

Thus, plaintiffs have sufficiently pleaded an unconstitutional policy or custom. For reasons discussed below, however, the injunctive-relief claims of three plaintiffs—Moody, Deans, and Williams—are moot. *See* section F. So, the motion to dismiss the equitable claims against Paramo should be granted as to those three plaintiffs, but denied as to plaintiff Jones, who may still bring an equitable claim.

### B. Claims Against Defendant Duran

Defendants move to dismiss the complaint against defendant Duran "because it does not contain any facts regarding what Defendant Duran is alleged to have done during the incident." (ECF No. 23, at 3.) Officers "cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 unless they were integral participants in the unlawful conduct." *Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018). "[D]efendants can be held liable for 'integral participation' even if the actions of each defendant do not 'rise to the level of a constitutional violation,'" *id.*, but it is insufficient to merely allege "membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002).

The Ninth Circuit has typically found "integral participation" when the complaint plausibly alleges that the defendant's participation in the constitutional violation was knowing and meaningful. For example, in *Boyd v. Benton County*, 374 F.3d 773 (9th Cir.

2004), a police officer threw a flash-bang device during an apartment search, which injured the plaintiff. Every member of the search team was deemed an "integral participant," because "every officer was aware of the decision to use the flash-bang" and yet still chose to "participate[ in the search] in some meaningful way." *Id*. at 780. Similarly, in *Keates*, the Court considered which state employees were "integral participants" in removing a child from her mother's care. 883 F.3d at 1242. The Court held that the complaint—"just barely"—alleged integral participation by two Child Protective Services workers who spoke to an employee at the hospital where the child was being evaluated and "collaborated in the issuance of the [temporary custody notice]" that justified removing the child from her mother's care. *Id*. Yet the *Keates* Court held that the allegations against five other defendants were insufficient, as the complaint lacked specific facts to show that these "employees participated in the decision to interfere with [plaintiffs'] constitutional rights." *Id*.; *see also Sjurset v. Button*, 810 F.3d 609, 619 (9th Cir. 2015) (police officers who removed children from home were not integral participants, because they were not "privy to any discussions, briefings or collective decisions" in the protective-custody determination).

Plaintiffs allege that Duran was a member of a group that violated constitutional rights, but they fail to specify what he did during the July 17, 2017 incident. The complaint alleges that Duran was among 10-11 named defendants and 50 unnamed defendants who: (1) were each "a member of the Green Wall" (ECF No. 1, at 4 ¶21); (2) "personally utilized, failed to intercede and prevent, and/or were integral participants to excessive and unreasonable force against Plaintiffs" (*id*. at 12 ¶102, 18 ¶133); (3) "intentionally and personally touched or gave substantial assistance or encouragement in touching or threatened to touch Plaintiffs . . . without consent, . . . [which] constituted unreasonable and excessive force" (*id*. at 20 ¶143); and (4) "falsely reported the incidents and injuries resulting from their conduct" (*id*. at 10 ¶90).

These conclusory allegations do not establish that Duran was an integral participant in the July 17, 2017 incident, nor that he was present for it—or even aware of it at the time.

The claim of after-the-fact false reporting does nothing to change the analysis. "[P]reparing a false report about an incident after it occurred cannot subject that individual to liability for the force used during the incident." *Sim v. Duran*, No. 1:16-CV-01051-SAB (PC), 2017 WL 5972739, at *5 (E.D. Cal. Dec. 1, 2017) ("A complaint alleging that an officer filed a false report, by itself, fails to state a claim upon which relief can be granted." (quotation marks omitted)).

Because the complaint fails to show that Duran integrally participated in any unlawful conduct, the motion to dismiss the claims against him should be granted, with leave to amend.

## C. Retaliation (Second Claim)

Defendants move to dismiss Moody, Deans, and Jones's First Amendment retaliation claims for insufficiency. (ECF No. 18-1, at 11.) To properly allege such a claim, the prisoner must assert that: (1) "a state actor took some adverse action against [the] inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

### 1. *Plaintiff Moody's Retaliation Claim*

Moody alleges that in order "to 'break up' the inmates and to thwart and obstruct their efforts to submit and exhaust grievances related to the July 17, 2017[] incident," he was "placed in administrative segregation/'the hole'" and transferred to a different facility. (ECF No. 1, at 10 ¶¶91-93.) This allegation suffers from at least three deficiencies. First, the complaint fails to identify any specific defendant or state actor who took the alleged adverse actions—that is, improperly transferring Moody or placing him in "the hole." This Court's inquiry must be "individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional

deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Moody's conclusory allegation fails to meet this standard.

A second and related shortcoming is that Moody does not establish that anyone took adverse action against him *because of* his protected speech. All four plaintiffs may have been sent to administrative segregation for filing grievances. But perhaps it was simply because they were involved in a fight or for some other reason. The complaint provides no details regarding this necessary element. Finally, Moody fails to allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). For all these reasons, his retaliation claim should be dismissed, with leave to amend.

### 2. *Plaintiff Deans's Retaliation Claim*

The complaint alleges that plaintiff Deans was "vocal during the [July 17, 2017] incident and call[ed] out for the officers to 'Stop!' while they were beating the defenseless and handcuffed Plaintiff MOODY." (ECF No. 1, at 8 ¶67.) As a result, Deans maintains that the officers retaliated against him, in that he was "falsely charged with assaulting prison staff," "placed in administrative segregation/'the hole,'" and transferred to a different facility. (*Id.* at 8 ¶67, 10 ¶¶91-93.) It is unclear whether the First Amendment gives inmates a right to verbally protest prison guards actively engaged in an altercation.[2] "A number of district courts have held verbal challenges to prison officials that are argumentative, confrontational, and disrespectful are not protected by the First Amendment." *Spencer v. Torres*, No. CV 18-8455-FMO (KK), 2018 WL 6411354, at *5

---

[2] Plaintiffs rely on *Fairley v. Andrews*, 430 F. Supp. 2d 786 (N.D. Ill. 2006), for the proposition that the First Amendment protects "speaking out against inmate abuse and excessive force." (ECF No. 22, at 16 (quoting *Fairley*, 430 F. Supp. 2d at 796).) But that case involved the free-speech rights of *correctional officers*, not inmates. *See Fairley*, 430 F. Supp. 2d at 789, 791, 796. Prisoners' constitutional rights "are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).

7

(C.D. Cal. Dec. 6, 2018). Even if yelling "Stop!" qualifies as protected speech, plaintiff Deans's retaliation claim has the same three defects identified in Moody's claim, above, and should also be dismissed, with leave to amend.

### 3. *Plaintiff Jones's Retaliation Claim*

Unlike Moody and Deans, plaintiff Jones puts some meat on the bones of his retaliation claim. After Jones filed a grievance about the July 17, 2017 incident, he asserts that defendant Rodriguez called him into his office, asked if Jones "thought he was a 'tough guy,'" and attempted (unsuccessfully) to intimidate him into withdrawing his grievance. (ECF No. 1, at 11 ¶97.) "The mere *threat* of harm can be an adverse action. . . ." *Watison*, 668 F.3d at 1114. Although these facts are somewhat sparse, Jones moves the needle the farthest on the retaliation elements. But not far enough. First, especially since Jones did not withdraw his grievance, he must show that Rodriguez's intimidation had some "chilling effect" on his free-speech rights, by alleging that "he suffered some other harm that is more than minimal." *Id*. (quotation marks omitted). Second, like his co-plaintiffs, Jones fails to address whether the retaliatory action advanced any legitimate correctional goal. Finally, even if Jones cures these issues with his claim against Rodriguez, the complaint is devoid of specific facts that would implicate any other defendant in retaliation. In particular, Jones fails to link any defendant to the other retaliatory tactics he focuses on: being "falsely charged with assaulting prison staff," administrative segregation, and transferring his co-plaintiffs to another facility. (ECF No. 1, at 10 ¶¶91-93.)

Like his co-plaintiffs, Jones's retaliation claim fails. It should be dismissed, with leave to amend.

## D. Conspiracy (Third Claim)

According to defendants, plaintiffs offer nothing but conclusory allegations to support a conspiracy claim under either 42 U.S.C. § 1983 or § 1985(3). The elements of a § 1983 conspiracy are: "(1) the existence of an express or implied agreement among the defendant officers to deprive [plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583,

8

592 (9th Cir. 2010). Similarly, a § 1985(3) conspiracy requires: "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). Also, for a § 1985(3) conspiracy, plaintiff "must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Plaintiffs point to two sets of facts in the complaint to support a conspiracy: general allegations about the "Green Wall" and specific allegations about a private meeting, or "huddle-up," after the alleged beating of plaintiff Moody.

**1.** *The "Green Wall"*

Plaintiffs assert that Warden Paramo "accepts or acquiesces in a pervasive culture of violence against prisoners," and that defendants are part of a "Mafia-like prison gang of correctional officers" called the "Green Wall," who engage in violence and wrongdoing against prisoners like plaintiffs, "motivated, at least in part, by racial animus." (ECF No. 1, at 3-4 ¶¶19-22.) These accusations are too generalized to support a conspiracy. Plaintiffs "must state specific facts to support the existence of the claimed conspiracy," not merely "conclusory allegations." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam); *see also Andrews v. Whitman*, No. 06-2447-LAB (NLS), 2009 WL 857604, at *25 (S.D. Cal. Mar. 27, 2009) (allegations that each defendant was "a member of the Green Wall prison guard gang and [had] entered a secret agreement to conspire with the other Defendants to terrorize plaintiff" were insufficient to state a conspiracy claim).

**2.** *"Huddle-Up" During the July 17, 2017 Incident*

The complaint alleges that: After beating plaintiff Moody on July 17, 2017, a number of defendant officers "huddled-up" outside the unit to "plan[] and coordinate[] how they would threaten and attack the prisoners . . . in [an] attempt to suppress and discourage the prisoners from reporting the beating of Plaintiff MOODY." (ECF No. 1, at 7 ¶62.) The officers then re-entered the unit and beat plaintiffs Deans, Jones, and Williams. (*Id*. at 7-

9

9 ¶¶63-85.) Defendants argue that plaintiffs cannot "plausibly allege the officers entered into an agreement," because the complaint establishes that the "huddle-up" happened "outside of the presence of the prisoners." (*See id*. at 7 ¶62; ECF No. 18-1, at 12-13.) Plaintiffs respond that the "huddle-up" was outside their physical presence, but still visible to them. (ECF No. 22, at 18.) Regardless, the timing of the defendants' private meeting, followed by their alleged attacks on Deans, Williams, and Jones, sufficiently states a claim for a § 1983 conspiracy as to those three plaintiffs. By contrast, the officers purportedly beat Moody *before* the "huddle-up," so he was not a victim of any "huddle-up" conspiracy to use excessive force. Finally, plaintiffs fail to state a claim for a § 1985(3) conspiracy, as the complaint offers nothing but conclusory allegations of a qualifying discriminatory animus.

Consequently, the Court recommends granting defendants' motion to dismiss: (1) the § 1985(3) conspiracy claim, with leave to amend, and (2) all of Moody's conspiracy claims, without leave to amend. But the § 1983 conspiracy claim should otherwise survive as to plaintiffs Deans, Williams, and Jones.

**E.    The ADA and the Rehabilitation Act (Fourth and Fifth Claims)**

Plaintiffs sue defendant California Department of Corrections and Rehabilitation under the Rehabilitation Act and Title II of the Americans with Disabilities Act, which "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see also* 29 U.S.C. § 701, *et seq*. (Rehabilitation Act); 42 U.S.C. § 12101, *et seq*. (ADA). "There is no significant difference in analysis of the rights and obligations created by the ADA and Rehabilitation Act." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). To state a claim under Title II of the ADA, a plaintiff must show that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise

discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability.

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (alterations omitted).

### 1. *Individual with a Disability*

The complaint is silent as to plaintiffs' specific disabilities, but they may still satisfy this element based on perceived impairments. Under the ADA, the definition of "disability" includes: (1) being "regarded as having" a "physical or mental impairment that substantially limits one or more major life activities," or (2) for individuals who are subjected to prohibited conduct under the ADA, having a "perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *See* 42 U.S.C. § 12102(1)(A)&(C) & (3)(A).

During the July 17, 2017 incident, plaintiffs were incarcerated at Donovan Correctional Facility, which houses and treats prisoners "with severe mental illnesses and identified as having medium- to high-risk medical concerns." (ECF No. 1, at 3 ¶17.) In fact, plaintiffs were specifically held in the "Enhanced Outpatient Program" unit, and the fighting began during "pill call," when prisoners were receiving their medications. (*Id*. at 4-5 ¶¶24-25, 33-34.) As prison guards at that facility, the relevant defendants likely assumed the plaintiff-inmates had some physical or mental impairments. This is especially true for plaintiff Deans, "who walks with the aid of a cane and was wearing a green vest indicating his limited status." (ECF No. 1, at 7 ¶65.) Plaintiff Jones was also a "medically-fragile prisoner who was wearing a green vest indicating his status." (ECF No. 1, at 8 ¶68.)

In the light most favorable to the pleader, plaintiffs pass the first step of the analysis.

### 2. *Qualified to Receive Benefits*

As inmates, each plaintiff was qualified to participate in or receive the benefits from prison services, programs, or activities. (ECF No. 1, at 15 ¶117, 16 ¶123.)

### 3. *Discrimination or Exclusion*

For the third element, plaintiffs must show that they were discriminated against regarding—or excluded from—prison services, programs, or activities. "Discrimination

11

includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other gds.*, 135 S.Ct. 1765 (2015). Plaintiffs argue that defendants "failed to accommodate their disabilities by utilizing excessive force against them when it was not reasonable to do so." (ECF No. 22, at 20.) In the slightly different context of arrests, the Ninth Circuit has held that employing excessive force against a disabled person, rather than "less confrontational tactics," can amount to a failure to accommodate under the ADA. *See Vos*, 892 F.3d at 1037 (quoting *Sheehan*, 743 F.3d at 1233). This Court presumes that reasoning also applies in the prison context, so plaintiffs have adequately alleged discrimination.

### 4. *Intent*

Finally, a plaintiff must plausibly allege "intentional discrimination on the part of the defendant," but may do so by showing mere "deliberate indifference." *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1139. Here defendants knew plaintiffs were likely disabled and thus entitled to certain accommodations in guard-inmate encounters. *See* section E.1, above. The officers also knew that using excessive force against such disabled prisoners would harm their right to those accommodations. Yet, according to the complaint, defendants used excessive and unprovoked force against them anyway. (ECF No. 1, at 6-9 ¶¶43-46, 66, 69-71, 83.) *Cf. Vos*, 892 F.3d at 1037 (holding that excessive-force ADA claim survives summary judgment because the defendant arresting officers had time to employ accommodations, such as "de-escalation, communication, or specialized help"); *Sheehan*, 743 F.3d at 1233 (same).

Defendants' motion to dismiss the disability-related claims should be denied.

## F. Declaratory and Injunctive Relief (Sixth Claim)

Because plaintiffs Moody, Deans, and Williams were transferred from Donovan (ECF No. 1, at 2 ¶¶3-5; *id*. at 10 ¶93), defendants argue that these plaintiffs' injunctive and declaratory relief claims are moot. Unless inmates demonstrate a "reasonable expectation

12

18-cv-1110-WQH-AGS

of returning" to the offending prison, their injunctive relief claims regarding prison policies are mooted when they are transferred or released, and thus are "no longer subjected to those policies." *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam). "The same is true for claims seeking declaratory relief." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). Since these plaintiffs have not established a reasonable expectation of returning to Donovan, their equitable claims are moot.

To avoid this inescapable conclusion, the transferred plaintiffs attempt to shoehorn their facts within the mootness exception for the "narrow class of cases" that are "capable of repetition, yet evading review." *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). Yet this very lawsuit refutes the notion that this issue will escape review. Unlike his three co-plaintiffs, plaintiff Jones may press the equitable claims, as he still resides at Donovan. (*See* ECF No. 1, at 2 ¶6.) These claims will have their day in court.

The three transferred plaintiffs also fail to plausibly allege that they face a likelihood of recurrence that requires the court's equitable intervention. Their reliance on class-action precedents is inapposite. Unlike the mootness analysis in this lawsuit, a judge in a class action must consider that the named plaintiff "represent[s] broader interests than his own." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001). In plaintiffs' other cited cases, mootness was not at issue or the inmates plausibly alleged an ongoing harm. *See, e.g.*, *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001) (holding that the plaintiff-prisoners were "entitled to parole hearings before the Board [involving the allegedly unconstitutional procedures] at least every five years, and as often as every year. . . . The likelihood that a prisoner will be subjected to the hearings involved is, therefore, not at all speculative; rather, it is certain."), *abrogated on other gds. by Johnson v. California*, 543 U.S. 499 (2005); *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 933-34 (E.D. Cal. 2015) (mootness not at issue).

Plaintiff Jones may still carry the banner for injunctive and declaratory relief, but the equitable claims of the other plaintiffs are moot and should be dismissed with prejudice.

## G. California Constitution—"Cruel or Unusual Punishment" (Seventh Claim)

Plaintiffs seek money damages under Article I, Section 17 of the California Constitution, which prohibits "[c]ruel or unusual punishment." But the California Court of Appeal has held that "there is no basis to recognize a claim for damages" under that constitutional provision. *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 256 (2008).

Federal courts have repeatedly concurred with this conclusion, and this Court has found no contrary state or federal decisions. *See, e.g.*, *Asberry v. Relevante*, No. 1:16-CV-01741-LJO-JDP, 2018 WL 4191863, at *7 (E.D. Cal. Aug. 31, 2018) (analyzing the *Giraldo* decision in detail and concluding that "Article I, Section 17 provides no private right of action for damages"), *adopted*, 2018 WL 4616383 (Sept. 24, 2018); *Hicks v. Hamkar*, No. 2:13-CV-01687-KJM-DB, 2016 WL 5847011, at *8 (E.D. Cal. Oct. 6, 2016) ("[U]nder Article I, § 17 of the California Constitution, which prohibits cruel or unusual punishment, . . . no private cause of action for damages exists. . ."); *Santana v. Zhang*, No. 3:16-CV-00105-GPC-JMA, 2016 WL 4917118, at *14 (S.D. Cal. Sept. 15, 2016) (same); *Stroman v. Davis*, Civ. No. 2:14-524 WBS CKD, 2014 WL 3867473, at *3 (E.D. Cal. Aug. 6, 2014) (same); *Davis v. Kissinger*, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, at *12 n.4 (E.D. Cal. Feb. 3, 2009) (same), *adopted*, 2009 WL 647350 (Mar. 10, 2009).

Because there are no "convincing indications that the state supreme court would hold otherwise," this Court adopts *Giraldo*'s analysis. *See Asante v. Cal. Dep't. of Health Care Servs.*, 886 F.3d 795, 799 (9th Cir. 2018). Defendants' motion to dismiss the California constitutional claims should be granted, without leave to amend.

## CONCLUSION

This Court recommends that defendants' motion to dismiss be granted in part and denied in part, as set forth above. Thus, these causes of action should be **DISMISSED**, with leave to amend:

1. All claims against defendant Duran (First, Third, Seventh, Eighth, Ninth, Tenth, and Eleventh Claims);

2. The conspiracy claim based on § 1985(3) (Third Claim); and

3. Plaintiffs Moody, Deans, and Jones's retaliation claim (Second Claim).

And the following causes of action should be **DISMISSED WITH PREJUDICE** (that is, *without* leave to amend):

4. All of plaintiffs Moody, Deans, and Williams's claims against defendant Paramo (First, Third, and Sixth Claims);

5. All of plaintiff Moody's conspiracy claims (Third Claim);

6. Plaintiffs Moody, Deans, and Williams's declaratory and injunctive relief claim (Sixth Claim); and

7. The "cruel or unusual punishment" claim under Article I, § 17 of the California Constitution (Seventh Claim).

The Court also recommends that plaintiffs be given **21 days** from the District Judge's ruling on this matter to file a first amended complaint on any claims that are dismissed without prejudice.

By July 12, 2019, the parties must file any objections to this report. *See* 28 U.S.C. § 636(b)(1). The party receiving any such objection has 14 days to file any response. *See* Fed. R. Civ. P. 72(b)(2).

Dated: June 28, 2019

_____
Hon. Andrew G. Schopler
United States Magistrate Judge