UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RONNIE L. MOODY, GARY T. DEANS, BILLY R. WILLIAMS and DONNEL E. JONES,

Plaintiffs,

vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, PARAMO, MCGEE, RODRIGUEZ, SALAZAR, RAMOS, ADAMS, HERRERA, EDROZO, CRUZ, DURAN, AVILA, BRAVO and DOES 1-50,

Defendants.

Case No.: 18cv1110-WQH (AGS)

**ORDER GRANTING MOTION TO DISMISS**

HAYES, Judge:

Presently before the Court is Defendants' motion to dismiss (ECF No. 49), Plaintiffs' opposition (ECF No. 53), and Defendants' reply (ECF No. 54).

## I.     BACKGROUND

On May 31, 2018, Plaintiffs Moody, Deans, Williams, and Jones, state prisoners housed at the Richard J. Donovan Correctional Facility (RJD) in San Diego, California at the time of the events, initiated this action by filing a civil Complaint asserting claims under

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, the Rehabilitation Act (RA), 29 U.S.C. § 794, the Declaratory Judgment Act, 28 U.S.C. § 2201(a), for excessive use of force pursuant to 42 U.S.C. § 1983, conspiracy to violate federal rights under color of state law pursuant to 42 U.S.C. §§ 1983 & 1985, and several state law claims.  (ECF No. 1 at ¶¶ 100-155.)  They alleged there is a "Mafia-like prison gang of correctional officers" operating at RJD who call themselves the "Green Wall," consisting of Defendants Rodriguez, McGee, Salazar, Ramos, Adams, Guerrera, Edrozo, Cruz, Duran, Avila, Bravo and Does 1-50, and that Defendant Paramo, the Warden of RJD, is aware of and has failed to take action against them.  *Id*. ¶¶ 19-21.  Defendants allegedly engaged "in unlawful activity," "sometimes with racial animus," against Plaintiffs, who "are each black men," "including staff-on-prisoner violence, coordination of prisoner-on-prisoner violence," as well as "smuggling illegal contraband/items into [the prison] such as illegal drugs and cell phones which are sold to prisoners for cash, and the planting of illegal contraband/items on prisoners (and false reporting thereof)."  *Id*.  Plaintiffs claimed Defendants used excessive force against them during a July 17, 2017 incident, interfered with their ability to submit inmate grievances regarding that incident, and retaliated against them for their use of the inmate grievance process.  *Id*. ¶¶ 23-98.

On September 18, 2018, Defendants California Department of Corrections and Rehabilitation (CDCR), Paramo, McGee, Bravo, Ramos, Cruz, Edrozo, Duran and Salazar, filed a motion to dismiss the Complaint.  (ECF No. 18.)  On September 3, 2019, the Court granted in part and denied in part the motion to dismiss, dismissed several claims, and granted Plaintiffs leave to amend.  (ECF No. 46.)

Plaintiffs filed a First Amended Complaint (FAC), the operative pleading in this action, on September 26, 2019, reasserting all claims and renaming all Defendants in the original Complaint with the exception of those claims dismissed with prejudice in the Court's September 3, 2019 Order, which include the claims brought pursuant to Article I, § 17 of the California Constitution and the claims for declaratory and injunctive relief by Plaintiffs Moody, Deans and Williams.  (ECF No. 48.)  The FAC asserts new allegations

with respect to the ADA and RA claims that Plaintiffs are housed in a mental health outpatient program and are regarded as having or are perceived as having physical or mental impairments which substantially limit one or more major life activities which Defendants failed to accommodate during the July 17, 2017 incident. *Id*. at 5-6.

October 10, 2019, Defendants CDCR, Paramo, McGee, Bravo, Ramos, Cruz, Edrozo, Duran, Salazar, and Herrera[1] filed the instant motion to dismiss the ADA and RA claims in the FAC as to all Plaintiffs, and to dismiss the 42 U.S.C. § 1983 retaliation claim as to Plaintiffs Moody and Deans. (ECF No. 49.) For the reasons discussed herein, the Court grants Defendants' motion to dismiss, dismisses the ADA and RA claims as to all Plaintiffs, and dismisses the retaliation claim as to Plaintiffs Moody and Deans.[2]

## II. ALLEGATIONS IN THE FAC

Plaintiffs allege that on July 17, 2017, they were each housed in the Facility C Yard Enhanced Outpatient Program (EOP) Unit of RJD. (ECF No. 48 at ¶¶ 23-24.) The EOP "is a mental health program whose goal is to identify issues preventing an inmate from programming on mainline, address the issues through individualized treatment plans, and return the inmate to the least restrictive environment." *Id*. ¶ 25. It "provides inmates with individual weekly therapy, structured clinical groups, and recreational therapy." *Id*. "All inmates housed within an EOP Unit are either regarded by Defendant CDCR and its personnel as having a physical or mental impairment that substantially limited one or more major life activities, or perceived by Defendant CDCR and its personnel to have a physical or mental impairment." *Id*. ¶ 26.

///

---

[1] Defendant Guerrera is named in the original Complaint but the FAC names Defendant Herrera in place of Guerrera. (ECF No. 48 at 3.)

[2] Although the motion was referred to United States Magistrate Andrew G. Schopler pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither oral argument nor a Report and Recommendation is needed for its disposition. S.D. Cal. CivLR 72.1(d).

Plaintiffs allege that on the morning of July 17, 2017, nine cells were open for "pill call" in the EOP Unit at RJD. *Id.* ¶ 27. Plaintiffs Deans and Jones exited their cells and were standing in line to receive medication while Plaintiff Williams was in his cell and Plaintiff Moody was sitting outside counselor Fuerte's office. *Id.* ¶¶ 28-30. When an alarm sounded at an adjacent facility all inmates at RJD were instructed to sit on the ground, which Plaintiffs did, but Plaintiff Moody's feet were partially obstructing a doorway and counselor Fuerte kicked his feet and cursed at him. *Id.* ¶¶ 21-35. Plaintiff Moody and counselor Fuerte began fighting; a tower guard shot at Plaintiff Moody with a block gun but missed him and hit counselor Fuerte. *Id.* ¶¶ 36-38. As a result, the alarm sounded in the EOP Unit and several officers rushed into the unit and hit Plaintiff Moody with batons, sprayed pepper spray in his face, and shot him with a block gun. *Id.* ¶¶ 39-41. After Plaintiff Moody submitted by lying face down on the floor he was once again sprayed in the face with pepper spray. *Id.* ¶¶ 42-43. After he was handcuffed with his hands behind his back he was kicked in the face by Defendant McGee. *Id.* ¶¶ 44-45. "Several officers, including Defendants Doe 1-50, then joined in and proceeded to punch, kick, and hit Plaintiff Moody with their batons on his body and face as Plaintiff Moody was defenseless, handcuffed, and lying on the ground." *Id.* ¶ 46. Defendants Salazar, Ramos, Herrera, and Adams are identified as being involved in that beating. *Id.* ¶¶ 47-48.

The FAC alleges Plaintiff Williams yelled from inside his cell at the officers to stop beating Plaintiff Moody and told them he "saw everything" and "I'm going to report you all." *Id.* ¶¶ 52-53. Defendant Salazar asked Plaintiff Williams what he was going to report, and a few minutes later five other officers, Doe Defendants 1-5, entered his cell and told him to keep his mouth closed or they would take his property. *Id.* ¶¶ 55-60. As those Defendants were walking away, Plaintiff Williams told them: "I don't care if you threaten me. I'm still going to report you all." *Id.* ¶ 61. Defendants McGee, Salazar, Ramos, Cruz, Adams, Herrera, Edrozo, Duran, Avila, Bravo, and Does 1-50 then huddled up outside the EOP Unit, and "[o]n information and belief, the officers planned and coordinated how they would threaten and attack the prisoners, including Plaintiffs Deans, Williams, and Jones,

in [an] attempt to suppress and discourage the prisoners from reporting the beating of Plaintiff Moody." *Id*. ¶ 64. The officers reentered the EOP Unit and ordered all inmates to return to their cells. *Id*. ¶¶ 65-66. As Plaintiff Deans was walking to his cell with the aid of cane "wearing a green vest indicating his limited status," Defendant Salazar, without provocation, hit him in the face causing him to fall to the floor. *Id*. ¶¶ 67-68. Other officers, including Defendant Does 6-10, jumped on Plaintiff Deans and began beating him while Defendant Duran watched and failed to intervene. *Id*. ¶ 69. Plaintiff Deans alleges he was targeted for yelling "stop" during the beating of Plaintiff Moody. *Id*.

Around that same time, Plaintiff Jones, "a medically-fragile prisoner who was wearing a green vest indicating his status," was walking back to his cell when he was tackled from behind by Defendant Edrozo. *Id*. ¶¶ 70-71. Defendant Cruz then grabbed and twisted Plaintiff Jones' right arm behind his back. *Id*. ¶¶ 71-72. Plaintiff Jones told Defendant Cruz "[y]ou broke my arm," and was taken to the RJD medical facility where he was told nothing was wrong with his arm; he later saw a doctor and was diagnosed with a broken arm. *Id*. ¶¶ 71-74. Plaintiff Williams attempted to watch Defendants beat Plaintiff Deans, but his view was intentionally blocked by Defendant Does 11-14. *Id*. ¶ 75. Plaintiff Williams was ordered out of his cell where his hands were handcuffed behind his back and he was asked: "What did you want to say?" *Id*. ¶¶ 76-78. When Plaintiff Williams responded he wanted to report he had witnessed officers beating inmates and threatening to take their property, Defendant Bravo approached and repeated the question, and Plaintiff Williams repeated his answer. *Id*. ¶¶ 79-84. Defendant Bravo then punched Plaintiff Williams in his right eye with a closed fist opening a wound. *Id*. ¶ 85. Defendant Doe 11 then slammed Plaintiff Williams to the floor, opening a wound on his chin and knocking two teeth loose. *Id*. ¶ 87.

The FAC alleges Defendants McGee, Salazar, Ramos, Adams, Herrera, Edrozo, Cruz, Duran, Avila, Bravo, and Does 1-50 falsely reported those incidents and injuries, and that Plaintiffs Deans, Williams, and Jones were each falsely charged with assaulting prison staff and punished by being placed in administrative segregation, "either because of their

efforts to speak up and prevent the beating of their fellow inmates and/or their efforts to lodge complaints and grievances related to the beatings." *Id.* ¶¶ 92-94.  Following the July 17, 2017 incident Plaintiffs Moody, Deans, and Williams were transferred to different CDCR institutions allegedly to thwart and obstruct their efforts to exhaust their administrative remedies regarding the incident, which have been thwarted and obstructed by meritless cancellations, rejections and loss of paperwork. *Id.* ¶ 96-98.  Plaintiff Jones states he spent four months in segregation, had time added to his sentence, and had personal property stolen, all in retaliation for refusing to withdraw his grievances. *Id.* ¶ at 100.

The FAC presents claims for excessive use of force in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983 (claim one), retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 (claim two), conspiracy to violate Plaintiffs' rights under the First and Eighth Amendments pursuant to 42 U.S.C. § 1983 (claim three), violations of the ADA (count four) and RA (count five), for a declaratory judgment by Plaintiff Jones against Defendant Paramo (count six), and state law claims under the Tom Bane Civil Rights Act, California Civil Code § 52.1 (claim seven), assault and battery (claim eight), intentional infliction of emotional distress (claim nine), and negligence (claim ten). *Id.* ¶¶ 103-53.

## III.  LEGAL STANDARDS FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556,

570 (2007)).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation.")

   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## IV.  ADA AND RA CLAIMS

   In its previous Order, the Court granted Defendants' motion to dismiss the ADA and RA claims from the original Complaint after finding the facts alleged did not support a plausible inference Defendants took the alleged actions because of Plaintiffs' disabilities. (ECF No. 46 at 11.)  Defendants argue in the instant motion to dismiss that Plaintiffs have failed to cure that deficiency of pleading in the FAC.  (ECF No. 49-1 at 8.)  Defendants contend Plaintiffs have asserted no new facts to support an ADA or RA claim, merely allegations which tend to show Defendants knew or should have known of Plaintiffs' status as disabled individuals, and argue that Plaintiffs continue to allege Defendants used

excessive force against them in retaliation for their use of the prison grievance system, not on the basis of their disabilities. *Id.* Defendants argue Plaintiffs merely allege that because excessive force is unnecessary when dealing with disabled inmates, their disabilities were not accommodated when excessive force was used against them, which is a legal conclusion insufficient to state a plausible ADA or RA claim. *Id.*

Plaintiffs oppose the motion to dismiss, arguing they have sufficiently alleged deliberate indifference to federally-protected rights based on their disabilities and that their disabilities were not reasonably accommodated. (ECF No. 53 at 6.) They argue they posed no threat to institutional security when they were attacked, and their allegations satisfies the pleading standards for ADA and RA claims which requires a level of intent equal to that of an Eighth Amendment deliberate indifference claim. *Id.* at 11-17. Defendants reply that Plaintiffs have alleged their Eighth Amendment rights were violated not by reason of their disabilities but because Plaintiff Moody attacked counselor Fuerte and in order to silence them from reporting the beatings. (ECF No. 54 at 3-7.)

As the Court noted in its previous Order dismissing the ADA and RA claims from the original Complaint, in order to state a claim under the ADA Plaintiffs must allege facts showing they: (1) have a disability; (2) are otherwise qualified to participate in or receive the benefit of "some public entity's services, programs or activities," (3) were excluded from or denied the benefits of a program, activity or service, or otherwise discriminated against, and (4) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." (ECF No. 46 at 9, citing *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).) Plaintiffs' RA claim is analyzed under those same standards. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001).

Plaintiffs allege in the FAC that Defendant CDCR is a "public entity" within the meaning of the ADA and RA, that Plaintiffs were at all times qualified individuals with a disability within the meaning of the ADA and RA, and that Defendants McGee, Salazar, Ramos, Adams, Herrera, Edrozo, Cruz, Duran, Avila, Bravo and Does 1-50 failed to reasonably accommodate their disabilities. (ECF No. 48 at ¶¶ 120-29.) Plaintiffs allege

these Defendants "personally utilized, failed to intercede and prevent, and/or were integral participants to excessive and unreasonable force against them because of their apparent or perceived disabilities and the belief that they could not sufficiently defend themselves or grieve in response, in violation of the" ADA and the RA. *Id.* ¶¶ 121, 127.

Plaintiffs are unable to state an ADA or RA claim against the individual Defendants in their individual capacities. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities."); *Vincent v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (same with respect to both ADA and RA). However, Plaintiffs correctly allege the CDCR can be liable under the ADA and RA "if it intentionally *or with deliberate indifference* fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) (emphasis added); *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209 (1998) (holding that the ADA and RA apply to state prisons). The acts of the individual Defendants are relevant to that analysis. *See Duvall*, 260 F.3d at 1141 (recognizing that a public entity can be vicariously liable for the acts of its employees under the ADA and RA).

Assuming Plaintiffs have satisfied the first of the four ADA and RA pleading requirements, that they are persons with disabilities by virtue of their placement in the EOP, or at least with respect to Plaintiffs Jones and Deans because they were each "wearing a green vest indicating his limited status" at the time of the events, the FAC contains no factual allegations regarding the second element, that Plaintiffs are otherwise qualified to participate in or receive the benefit of a public program, activity, or service. Plaintiffs identify no programs, activities or services for which they are qualified but were denied the opportunity to participate in. The Ninth Circuit has stated that "[a]lthough we have noted that 'incarceration itself is hardly a "program" or "activity" to which a disabled person might wish access,' we have made clear that the ADA entitles inmates to receive the 'benefits' of the incarcerating institution's programs and services without facing

discrimination on account of a disability." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (quoting *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *see Yeskey*, 524 U.S. at 210 (noting that "services, programs, or activities" in the ADA includes recreational, medical, educational, and vocational prison programs). Plaintiffs have not identified the "services, programs, or activities" they were otherwise qualified to participate in but were denied the opportunity to do so as a result of their disabilities. *See e.g. Yeskey*, 524 U.S. at 208 (boot camp program); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 904 (9th Cir. 2013) (outside prison work program); *Armstrong*, 622 F.3d at 1068 (various programs no longer available to CDCR inmates housed in county jails); *Pierce*, 526 F.3d at 1214 (mobility barriers); *Thompson v. Davis*, 295 F.3d 890, 894-95 (9th Cir. 2002) (consideration for parole); *Duvall*, 260 F.3d 1140 (involvement in court proceedings); *Govind v. Adams*, No. 03cv0487-LAB (RBB), 2004 WL 7333718 at *10 (S.D. Cal. Apr. 20, 2004) ("Ordinarily, state prisoners' ADA claims relate to issues such as the denial of access to prison facilities, denial of satisfactory medical attention, denial of sign language interpretation services, or denial of the opportunity to participate in educational, vocational, or rehabilitation programs.") Plaintiffs present conclusory allegations that Defendants "failed reasonably to accommodate [their] disabilities and personally utilized, failed to intercede and prevent, and/or were integral participants to excessive and unreasonable force against them because of the apparent or perceived disabilities and the belief that they could not sufficiently defend themselves or grieve in response." (ECF No. 48 at ¶ 121.) Such allegations amount to the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678; *Papasan*, 478 U.S. at 286 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation."); *Sprewell*, 266 F.3d at 988 (a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.")

In addition to failing to identify any "services, programs, or activities" they were denied the benefits of, Plaintiffs have also failed to "establish the existence of specific

18cv1110-WQH (AGS)

reasonable accommodations that [Defendants] failed to provide." *Memmer v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999) (noting that accommodations must be provided only "when the modifications are necessary to avoid discrimination on the basis of disability.") Plaintiffs have failed to allege facts alleging a plausible allegation that the Defendants could have but failed to accommodate their disabilities. *Id*.; *see also Duvall*, 260 F.3d at 1139 (holding that it is only after the public entity has been notified that an accommodation is required that it must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation" and must "consider the particular individual's need when conducting an investigation into what accommodations are reasonable."); *Pierce*, 526 F.3d at 1215 ("Generally, public entities must make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.") (internal quote marks omitted).

In addition to identifying a specific reasonable accommodation Defendants failed to provide, Plaintiffs must still allege, as they were warned in the dismissal of the ADA and RA claims from the original Complaint, *facts* showing the Defendants' actions were taken "by reason of [their] disability." *O'Guinn*, 502 F.3d at 1060; *see Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (1997) (requiring plaintiff to plead and prove the defendant's actions supporting an RA claim were taken "solely by reason of disability.") As with the original Complaint, the FAC contains no factual allegations that any Defendant took any action by reason of Plaintiffs' disability. Rather, the FAC contains conclusory allegations Defendants "failed reasonably to accommodate [their] disabilities and personally utilized, failed to intercede and prevent, and/or were integral participants to excessive and unreasonable force against them *because of the* apparent or perceived disabilities and the belief that they could not sufficiently defend themselves or grieve in response." (ECF No. 48 at ¶ 121) (emphasis added).

/ / /

Plaintiffs acknowledge they must meet these pleading requirements.[3]  They argue they are satisfied by the allegations in the FAC that Defendants acted with "deliberate indifference" when they subjected them to excessive force, reasoning that Defendants could have accommodated Plaintiffs' disabilities if Defendants had refrained from escalating the situation arising from Plaintiff Moody's fight with counselor Fuerte or had utilized less confrontational means of dealing with the entire situation.  (ECF No. 53 at 13-15.)  Defendants reply that the deliberate indifference standard of the Eighth Amendment does not apply in this context, and that in any case the FAC presents only vague and conclusory allegations that Defendants failed to accommodate Plaintiffs' disabilities during the July 17, 2017 incident.  (ECF No. 49-1 at 9.)

The Ninth Circuit has held that an ADA plaintiff may "prove intentional discrimination on the part of the defendant," by satisfying a "deliberate indifference" standard, which requires a showing of "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall*, 260 F.3d at 1138-39.  The first element is satisfied by showing the CDCR had notice that an accommodation is required, and the second element requires "conduct that is more than negligent, and involves an element of deliberateness."  *Id.* at 1139 (holding that it is only *after* the public entity has been notified that an accommodation is required that it must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation" and must "consider the particular individual's need when conducting an investigation into what accommodations are reasonable.")  Even if Plaintiffs have alleged Defendant CDCR was

---

[3]  Plaintiffs argue the requirement that Defendants' actions were taken because of their disability is merely a prerequisite to recover money damages, which they acknowledge they are seeking.  (ECF No. 53 at 13.)  Nevertheless, for the reasons set forth herein, the FAC fails to identify any "services, programs, or activities" provided to non-disabled prisoners which Plaintiffs were denied the benefits of, or a reasonable accommodation Defendants failed to provide.  In any case, the FAC requests only monetary relief for the ADA and RA claims with respect to the only Defendant those claims are brought against, the CDCR.  (*See* ECF No. 48 at ¶¶ 123, 129, 132 and p. 25-26.)

on notice that an accommodation for their disabilities was required simply because they are or appear to be disabled, the FAC does not plausibly allege what accommodation was necessary or that it was denied. To the extent Plaintiffs contend the accommodation was simply for Defendants to refrain from using unconstitutionally excessive force in quelling the disturbance, it would eliminate the requirement they plead and prove the Defendants' actions were taken "by reason of [their] disability." *O'Guinn*, 502 F.3d at 1060; *Weinreich*, 114 F.3d at 978-79.

Plaintiffs cite two non-prisoner Ninth Circuit cases in their opposition to the motion to dismiss, both involving disabled citizens asserting ADA claims arising from a refusal to accommodate their disability when using excessive force during their arrests, to support an argument that Defendants' alleged refusal to refrain from escalating the situation arising from Plaintiff Moody's fight with counselor Fuerte, or their alleged failure to utilize less confrontational means of dealing with the entire situation, amounts to an intentional failure to accommodate Plaintiffs' disabilities. (*See* ECF No. 53 at 14.) In *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018), the district court found no accommodation was necessary when police fatally shot a suspect armed with a pair of scissors who later tested positive for methamphetamine and was found to have a medical history of schizophrenia, because the officers did not initiate the provocation with the suspect who posed an immediate threat. *Id*. at 1030, 1037. The Ninth Circuit found the district court erred in reading a provocation requirement into the need for an accommodation, that a question remained whether the officers could have potentially employed the accommodations identified by plaintiff such as de-escalation, communication, or specialized help, and reversed without addressing whether the officers' actions were taken because of the suspect's drug use or his mental disability. *Id*. at 1037. The *Vos* opinion relied on the second case cited by Plaintiffs, *Sheehan v. City and County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014), reversed in part and cert. dismissed in part sub nom. by *City and County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). In *Sheehan*, police officers responded to a group home to a report of a mentally ill woman who threatened a

social worker with a knife when he entered her room. *Id*. at 1217. When the officers entered the woman's room, she approached them aggressively with a knife and yelled at them to get out, and they retreated and called for backup. *Id*. at 1218-19. Instead of waiting for backup, the officers reentered her room, pepper-sprayed her, and when she continued to advance shot her five or six times. *Id*. at 1219-20. The Ninth Circuit held that the district court erred in holding that the officers were not required to first determine whether their actions would comply with the ADA because a reasonable jury could determine that the situation had been sufficiently diffused when the officers first retreated and they had "an opportunity to wait for backup and to employ less confrontational tactics." *Id*. at 1233. As with *Vos*, the district court in *Sheehan* did not reach the issue of whether the officers' actions were taken because of plaintiff's disability, *see Sheehan v. City and County of San Francisco*, 2011 WL 1748419 at *10-11 (N.D. Cal. 2011), and the Ninth Circuit, while acknowledging that taking actions by reason of the suspect's disability was an element of her ADA claim, held the defendants were not entitled to judgment as a matter of law with respect to their argument the ADA did not apply in the context of an arrest. *See Sheehan*, 743 F.3d at 1233. Any contention the Ninth Circuit equated knowledge of a suspect's disability by itself as proof the officers' actions were taken by reason of their disability, which Plaintiffs appear to argue, is belied by the subsequent partial reversal of *Sheehan* by the Supreme Court, which granted certiorari to decide (1) whether the ADA "requires law enforcement officers to provide accommodations to an armed, violent and mentally ill suspect in the course of bringing the suspect into custody," and (2) whether the officers can be held personally liable for Sheehan's injuries under 42 U.S.C. § 1983. *Sheehan*, 575 U.S. at ___, 135 S.Ct. at 1772, 1774. The Supreme Court dismissed the first question as improvidently granted, found the officers were entitled to qualified immunity because they did not have "fair and clear warning of what the Constitution requires" in the situation, and therefore did not need to "decide whether the Constitution was violated by the officers' failure to accommodate Sheehan's illness." *Id*. at 1774, 1778 (noting that a consensus may exist for the proposition that *mere knowledge of a disability* cannot foreclose officers from

protecting themselves, the disabled individual, or the public). Even accepting Plaintiffs' invitation to extend those cases to find that the ADA and RA apply to quelling prison disturbances to the same extent they apply to citizen arrests (*see* ECF No. 53 at 15-17), which Defendants argue is not permissible because arrests are based on Fourth Amendment standards and prisoners are protected by the Eighth Amendment (*see* ECF No. 54 at 7), Plaintiffs have still failed to provide any support for their contention that Defendants' alleged use of excessive force against them satisfies the pleading requirement that Defendants' actions were taken "by reason of [their] disability" simply because Defendants knew or should have known Plaintiffs are disabled.

In sum, even to the extent Plaintiffs have alleged the Defendants were aware they were disabled and failed to accommodate their disabilities in how they responded to Plaintiff Moody's fight with counselor Fuerte and during the ensuing events, the FAC does not plausibly allege the Defendants were motivated to take those actions because of Plaintiffs' disabilities. Because counts four and five of the FAC fail to state a claim for relief under the ADA and RA with respect to any Plaintiff, the Court grants Defendants' motion to dismiss counts four and five of the FAC and dismisses those claims. Because Plaintiffs have been advised of the requirements for stating such claims and have failed to do so, and because it is clear they are either unable or unwilling to satisfy the pleading standards for an ADA or RA claim, the dismissal is with prejudice.

## V. RETALILATION CLAIM

In count two of the FAC, all four Plaintiffs claim their First Amendment rights were violated when they were retaliated against by Defendants Rodriguez, Salazar, and Bravo for threatening to complain about the July 17, 2017 incident, and were punished for doing so. (ECF No. 48 at ¶¶ 94, 108-12.) Defendants move to dismiss this claim only with respect to Plaintiffs Moody and Deans, contending they have identified no state actor who took the allegedly adverse actions against them, and merely set forth conclusory allegations their actions were taken because of Plaintiffs' protected speech and did not advance legitimate correctional goals. (ECF No. 49-1 at 10-11.)

A retaliation claim has "five basic elements." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiffs must allege they engaged in protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, Plaintiffs must allege Defendants took adverse action against them. *Id.* at 567. The adverse action need not amount to an independent constitutional violation, *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995), and may be a "mere threat of harm." *Brodheim*, 584 F.3d at 1270. Third, Plaintiffs "must allege a causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. Fourth, Plaintiffs must allege the "official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal." *Rhodes*, 408 F.3d at 567 n.11. Fifth, Plaintiff must "allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *Watison*, 668 F.3d at 1114.

Plaintiffs bear the burden of pleading the existence of constitutionally protected activity, that the activity was a substantial or motivating factor for the alleged retaliation, and that the alleged retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). Although the Court is not required to accept as true legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, it must accept as true all well-pleaded factual allegations and construe all factual inferences in the light most favorable to Plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Plaintiff Deans contends in his opposition he has sufficiently alleged a retaliation claim based on the allegations in the FAC that: (1) he "was targeted by the officers in retaliation for his being vocal during the incident and calling out for the officers to 'Stop!' while they were beating the defenseless and handcuffed [Plaintiff Moody]" as alleged in

18cv1110-WQH (AGS)

¶¶ 67-69 of the FAC; (2) he was "falsely charged with assaulting prison staff" and "punished as a result of the charges, including being placed in administrative segregation/'the hole'" as alleged in ¶ 93 of the FAC; (3) he was "subject to punishment following the incident either because of (his) efforts to speak up and prevent the beating of their fellow inmates and/or because of (his) efforts to lodge complaints and grievances related to the beatings" as alleged in ¶ 94 of the FAC; (4) he was "transferred to (a) different and separate CDCR facilit(y) . . . with the intent to 'break up' the inmates and to thwart and obstruct their efforts to submit and exhaust grievances related to the July 17, 2017, incident" as alleged in ¶ 96 of the FAC; (5) his "attempts to submit CDCR Form 602 appeals/grievances related to the July 17, 2017, incident have been thwarted and obstructed by numerous and meritless cancellations and rejections by CDCR/RJDCF personnel that have refused to properly process the grievances. To date Plaintiffs . . . continue their efforts to 'exhaust' the CDCR Form 601 appeal/grievance process, without success" as alleged in ¶ 97 of the FAC; and (6) those obstruction efforts continued even after he "retained counsel that assisted (him) with the CDCR Form 602 appeal/grievance process" as alleged in ¶ 101 of the FAC. (ECF No. 53 at 9-10.)

With respect to the first allegation, that Defendants Salazar and Does 6-10 beat Plaintiff Deans for yelling "stop" during the beating of Plaintiff Moody, and that Defendant Duran watched without intervening, Defendants argue that simply yelling "stop" to prison officials who are beating a fellow inmate is not activity protected by the First Amendment because it is not tantamount to pursuing a lawsuit or filing a prison grievance. (ECF No. 54 at 3.) In the Court's previous Order granting in part and denying in part Defendants' motion to dismiss the original Complaint, the Court adopted the findings and conclusions of the Magistrate Judge that Plaintiff Deans had not stated a retaliation claim because even if yelling "stop" at officers who are beating a fellow inmate constitutes protected speech, he failed to identify any Defendant who took retaliatory actions against him because of that speech or that such actions did not advance legitimate correctional goals. (ECF No. 46 at 4-5.) Plaintiff Deans alleges in the FAC, as he did in the original Complaint (ECF No. 1

at ¶ 67), that: "On information and belief, Plaintiff Deans was targeted by the officers in retaliation for his being vocal during the incident and calling out for the officers to 'Stop!' while they were beating the defenseless and handcuffed Plaintiff Moody." (ECF No. 48 at ¶ 69.) The officers he alleges punched and kicked him are Defendant Does 6-10. *Id.* Plaintiffs contend in their opposition to the motion to dismiss that they "cannot allege the existence of the state actors who committed the alleged violations against Plaintiff Deans because they do not know their identities." (ECF No. 53 at 10.) There are no other Defendants identified as taking retaliatory actions against Plaintiff Deans, other than the initial assault by Defendant Salazar and Defendant Duran's failure to intervene, and Plaintiffs state in their opposition that they seek an opportunity through discovery to identify the Defendants who were personally responsible for "several adverse actions" against Plaintiff Deans, "including multiple attempts to thwart the filing of grievances immediately following the July 17, 2017 incident." *Id.* at 11. Defendants reply that Plaintiff Deans cannot identify those officers through discovery because fact discovery has been closed in this case since June 28, 2019. (ECF No. 54 at 3.) The Ninth Circuit has indicated that although the use of doe defendants is disfavored generally, rare cases may arise where plaintiffs "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

Even if Plaintiffs could discover the identity of the officers who "on information and belief" allegedly retaliated against Plaintiff Deans for yelling "stop" while Plaintiff Moody was being beaten, or to the extent the FAC identifies Defendants Salazar and Duran as two of those officers, as with the original Complaint, the retaliation claims of Plaintiffs Moody and Deans rely on vague and conclusory statements that adverse actions were taken against them in retaliation for their protected activity. Plaintiffs allege that ten of the named Defendants along with Does 1-50 huddled up after Plaintiff Williams threatened to report the beating of Plaintiff Moody, and "on information and belief" allege those Defendants

"planned and coordinated how they would threaten and attack" them. (ECF No. 48 at ¶ 64.) They also allege "on information and belief" that Plaintiff Deans was "targeted" by Defendant Salazar to be beaten for yelling stop during the beating of Plaintiff Moody. *Id.* ¶ 69. Although the timing is indicative of retaliatory intent, there are no factual allegations upon which their information and belief is based. *See Twombly*, 550 U.S. at 551, 557 (declining to accept as true conclusory allegations "upon information and belief" of a conspiracy without factual allegations which would make the assertion plausible); *see also Pratt*, 65 F.3d at 808 (9th Cir. 1995) (holding that although "timing can properly be considered as circumstantial evidence or retaliatory intent," it is not sufficient by itself).

The allegations that Plaintiff Deans and Moody were "falsely charged with assaulting prison staff" and "punished as a result of the charges, including being placed in administrative segregation/'the hole'" as alleged in ¶ 93 of the FAC, contain no *specific factual allegations* as to when those actions took place, who generated the false charges, or what falsehoods they contain, nor any specifics regarding the punishment they received or details regarding their placement in segregation, in particular why Defendants' actions did not advance legitimate penological purposes. *See Hines*, 108 F.3d at 267 (holding that plaintiffs bear the burden of pleading they took constitutionally protected activity, that such activity was a substantial or motivating factor for the alleged retaliation, and that the alleged retaliatory action advanced no legitimate penological interest). Merely alleging they were placed in administrative segregation without any supporting factual allegations regarding that placement whatsoever, is the type of conclusory allegation insufficient to allege their placement in administrative segregation did not advance a legitimate penological justification. *See Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) ("[P]rison officials have a legitimate penological interest in administrative segregation, and they must be given 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979)). The lack of factual allegations with respect to who made the decisions to

place them in segregation or otherwise punish them also amounts to a failure to plead a retaliation claim. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that a defendant is liable under § 1983 "only upon a showing of personal participation by a defendant."); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1991) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")

The same defects occur in the remaining allegations of retaliation that Plaintiffs Moody and Deans were "subject to punishment following the incident either because of [their] efforts to speak up and prevent the beating of their fellow inmates and/or because of [their] efforts to lodge complaints and grievances related to the beatings" as alleged in ¶ 94 of the FAC; that they were "transferred to (a) different and separate CDCR facilit(y) . . . with the intent to 'break up' the inmates and to thwart and obstruct their efforts to submit and exhaust grievances related to the July 17, 2017, incident" as alleged in ¶ 96 of the FAC; and that their "attempts to submit CDCR Form 602 appeals/grievances related to the July 17, 2017, incident have been [and continue to be] thwarted and obstructed by numerous and meritless cancellations and rejections by CDCR/RJDCF personnel that have refused to properly process the grievances" as alleged in ¶¶ 97 and 101 of the FAC. These are conclusory allegations without any specific factual basis necessary to identify which Defendants they contend took the adverse actions against them or whether there was a legitimate penological purpose for those actions. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution."); *Papasan*, 478 U.S. at 286 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation."); *Sprewell*, 266 F.3d at 988 (a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") Plaintiffs do not identify

any Defendant responsible for their transfers, nor do they allege their transfers did not serve a legitimate correctional goal. *See Pratt*, 65 F.3d at 806 (holding that plaintiffs bear the burden of pleading and proving the absence of a legitimate penological goal for an alleged retaliatory transfer); *Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (holding that transfer of inmate to preserve institutional security and order served a legitimate penological goal).

Because count two of the FAC does not state a 42 U.S.C. § 1983 claim for retaliation by Plaintiffs Moody and Deans, the Court grants Defendants' Motion to Dismiss the retaliation claim in count two of the FAC with respect to Plaintiffs Moody and Deans and dismisses those claims. Because Plaintiffs have been advised of the requirements for stating such a claim and have failed to do so, and because it is clear they are unable or unwilling to satisfy those pleading standards, the dismissal is with prejudice.

## V. Conclusion and Order

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 49) is GRANTED IN PART AND DENIED IN PART as set fort herein. The claims alleging violations of the Americans with Disabilities Act and the Rehabilitation Act as set forth in counts four and five of the First Amended Complaint are dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6). The retaliation claim brought pursuant to 42 U.S.C. § 1983 by Plaintiffs Moody and Deans in count two of the First Amended Complaint is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

**IT IS SO ORDERED**.

Dated: March 3, 2020

Hon. William Q. Hayes
United States District Court