1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:  (916) 443-6911
4  Facsimile:   (916) 447-8336
   E-Mail:      mark@markmerin.com
5               paul@markmerin.com

6
   Attorneys for Plaintiffs
7  RONNIE L. MOODY, GARY T. DEANS,
   BILLY R. WILLIAMS, and DONNEL E. JONES
8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11 RONNIE L. MOODY, et al.,              Case No. 3:18-cv-01110-WQH-AGS

12         Plaintiffs,                   **PLAINTIFFS' MEMORANDUM**
                                         **OF POINTS AND AUTHORITIES**
13 vs.                                   **IN OPPOSITION TO**
                                         **DEFENDANTS' MOTION FOR**
14 CALIFORNIA DEPARTMENT OF              **SUMMARY JUDGMENT**
   CORRECTIONS AND REHABILITATION,
15 et al.,                               [No Argument Requested]

16         Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2   I.   INTRODUCTION ........................................................................................ 1

3   II.   STATEMENT OF RELEVANT FACTS ................................................... 1

4      A.   GARY T. DEANS ............................................................................ 1

5      B.   DONNEL E. JONES ....................................................................... 2

6   III.   STATEMENT OF PROCEDURAL FACTS ........................................... 4

7   IV.   STATEMENT OF OPPOSITION ............................................................ 5

8   V.   ARGUMENT ............................................................................................. 6

9      A.   EQUITABLE RELIEF .................................................................... 6

10        1.   Mootness ............................................................................... 7

11        2.   Policy Or Custom .................................................................. 8

12        3.   PLRA Exhaustion ............................................................... 12

13           a.   Involved Staff Members ........................................... 12

14           b.   Facts Known And Available ...................................... 14

15        4.   Unavailability Of Administrative Remedies ........................ 15

16      B.   RETALIATION .............................................................................. 15

17        1.   Protected Activity ................................................................ 16

18        2.   Unavailability Of Administrative Remedies ........................ 16

19      C.   CONSPIRACY .............................................................................. 17

20        1.   Plaintiff Deans .................................................................... 17

21        2.   Plaintiff Jones ..................................................................... 18

22   VI.   CONCLUSION ......................................................................................... 19

23

24

25

26

27

28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

## <u>TABLE OF AUTHORITIES</u>

<span style="text-align:center">C<small>ASES</small></span>

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)............................................................ 6

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)................................................................ 12

*Allen v. City of Muskogee*, 119 F.3d 837 (10th Cir. 1997) .............................................. 9

*Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004) ..................................................... 5, 16

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)....................................... 10

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009)......................................................... 5, 16

*Butcher v. City of Marysville*, 398 F. Supp. 3d 715 (E.D. Cal. 2019)............................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 6

*Dorger v. City of Napa*, 2012 U.S. Dist. LEXIS 124551 (N.D. Cal. Aug. 31, 2012)..... 11

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ............................................................... 17

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015) .............. 6

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999) ...................................... 18

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)................................ 5, 7, 8, 9, 10, 13, 14

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) ........................................... 11

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013)....... 5, 7, 8, 13

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997) .............................................. 11

*Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017) ............................................................. 12

*Jones v. Bock*, 549 U.S. 199 (2007)................................................................................ 12

*Kentucky v. Graham*, 473 U.S. 159 (1985)....................................................................... 7

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) ............................................................. 16

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).............................................. 17

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ....................................... 9, 10

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981) ................................................. 1

*Martinez v. California*, 2009 U.S. Dist. LEXIS 18688 (E.D. Cal. Mar. 11, 2009)........ 12

*McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986) ......................................... 5, 9, 10, 13, 14

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999)............... 18

*Michael v. County of Nassau*, 2010 U.S. Dist. LEXIS 82764 (E.D.N.Y. Aug. 11, 2010) 9

*Mills v. Mitchell*, 792 F. App'x 511 (9th Cir. 2020) ............................................... 5, 15, 17

*Porter v. S. Nev. Health Servs.*, 2017 U.S. Dist. LEXIS 204740 (D. Nev. Dec. 13, 2017)..8

*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) ................................................................. 16

*Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016) ........................................................... 14, 15

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005) ......................................................... 16

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ................................ 10

*Rosales v. City of Chico*, 2015 U.S. Dist. LEXIS 142577 (E.D. Cal. Oct. 20, 2015) ..... 11

*Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142 (9th Cir. 2007) .............. 8

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ................................................................. 5, 15, 17

*Shepard v. Quillen*, 840 F.3d 686 (9th Cir. 2016) ...................................................... 5, 16

*Silva v. San Pablo Police Dep't*, 2020 U.S. App. LEXIS 7718 (9th Cir. Mar. 9, 2020) 10

*Steward v. County of Santa Clara*, 2020 U.S. Dist. LEXIS 32119 (N.D. Cal. Feb. 25, 2020) 12

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ........................................................ 10

*Watison v. Carter*, 668 F.3d 1108 (9th Cir. 2012) ...................................................... 5, 16

*Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998) ........................................... 10

<u>RULES</u>

Fed. R. Civ. P. 25(d) .......................................................................................................... 7

Fed. R. Civ. P. 56(c) .......................................................................................................... 6

<u>STATUTES</u>

42 U.S.C. § 1997e(a) .................................................................................................. 5, 12

<u>REGULATIONS</u>

Cal. Code Regs., tit. 15, § 3084.1 .................................................................................... 12

Cal. Code Regs., tit. 15, § 3084.2(a) ............................................................................... 12

Cal. Code Regs., tit. 15, § 3084.2(a)(3) ..................................................................... 12, 13

Cal. Code Regs., tit. 15, § 3084.2(a)(4) ........................................................................... 14

Cal. Code Regs., tit. 15, § 3084.7 .................................................................................... 12

1

## I.      INTRODUCTION

Plaintiffs Gary T. Deans and Donnel E. Jones[1] submit the following in opposition to Defendants California Department of Corrections and Rehabilitation ("CDCR"), Daniel Paramo/Marcus Pollard, J. McGee, J. Salazar, D. Ramos, J. Herrera, W. Edrozo, E. Cruz, J. Duran, and I. Bravo's Fed. R. Civ. P. 56(c) motion for summary judgment[2] (ECF No. 56 [MSJ]).[3]

## II.      STATEMENT OF RELEVANT FACTS

Generally, this action arises out of incidents occurring on July 17, 2017, at the Richard J. Donovan Correctional Facility ("RJDCF") located in San Diego, California.

### A.      GARY T. DEANS

Plaintiff Deans was outside of his cell, heading to the line for "pill call," when he heard an alarm sound. (Plaintiffs' Separate Statement of Disputed Material Facts ("SSF") 1.) Plaintiff Deans could not see the cause of the alarm but saw that staff ran outside of the room in response. (SSF 2.)

Counselor Fuerte closed the door to his office in Plaintiff Moody's face, while Plaintiff Moody was proned-out on the ground. (SSF 3.) Plaintiff Moody got up, went into counselor Fuerte's office, and punched him. (SSF 4.) Counselor Fuerte exited his office and signaled to the guards to activate the alarm. (SSF 5.) Counselor Fuerte fell to the ground and Plaintiff Moody punched him. (SSF 6.) The officer on the guard tower fired a shot from a block gun at Plaintiff Moody. (SSF 7.) The shot fired hit counselor Fuerte in the face. (SSF 8.) Several officers entered the room. (SSF 9.) Officers applied pepper-spray to Plaintiff Moody's face, one officer—possibly Defendant J. Salazar—hit

[1] The remaining claims of Plaintiffs Ronnie L. Moody and Billy R. Williams are unchallenged through Defendants' instant motion for summary judgment and, therefore, they are not parties to the opposition.

[2] Technically, Defendants have erroneously titled their motion as one for "summary judgment" when, in fact, it is only a motion for "summary adjudication" because Defendants do not seek dismissal of *every* claim alleged against them. *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) (the title of motions which "fall short of a final determination, even of a single claim," is "summary adjudication.").

[3] All references to pagination of cited documents pertain to those provided at the top of the document via the CM/ECF court docketing system, as opposed to the page number at the bottom of the document.

1

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1    him with a baton, and then handcuffs were applied to Plaintiff Moody's arms. (SSF 10.)

2    Plaintiff Moody was lying face-down on the ground. (SSF 11.) Defendant J. McGee, a

3    sergeant, came running into the room and kicked Plaintiff Moody in the face. (SSF 12.)

4    Another officer hit Plaintiff Moody with a baton. (SSF 13.) Plaintiff Deans called out

5    that it was not right for the officers to attack a defenseless inmate and that he would

6    write-up the officers. (SSF 14.)

7    　　　Many officers entered the room but then they all went outside, leaving the inmates

8    unsupervised. (SSF 15.) The officers returned to the room about a minute later and told

9    inmates to return to their cells. (SSF 16.) Plaintiff Deans was walking back to his cell

10   when Defendant J. Salazar told him to "come this way." (SSF 17.) Plaintiff Deans came

11   towards Defendant J. Salazar, with the aid of his cane. (SSF 18.) Defendant J. Salazar

12   sucker-punched Plaintiff Deans in the face with his closed fist, breaking his eye-glasses.

13   (SSF 19.) Plaintiff Deans fell to the ground, unconscious from Defendant J. Salazar's

14   blow. (SSF 20.) Plaintiff Deans regained consciousness and had handcuffs applied to his

15   arms. (SSF 21.) An officer had a knee pressed into Plaintiff Deans's back. (SSF 22.)

16   Plaintiff Deans could hear other inmates protesting the officers' attacks, as he lay on the

17   ground. (SSF 23.) Plaintiff Deans was taken to the gym and placed in a holding cell,

18   before being taken to administrative segregation. (SSF 24.)

19   **B.    DONNEL E. JONES**

20   　　　Plaintiff Jones was outside of his cell, standing in line for "pill call," when he

21   heard an alarm sound. (SSF 25.) Plaintiff Jones was ordered to sit down, on the ground,

22   and he complied. (SSF 26.) Plaintiff Jones heard movement, including the sound of

23   moving furniture, but did not see the altercation giving rise to the alarm. (SSF 27.)

24   Plaintiff Jones heard the sound of a block gun being fired. (SSF 28.) Plaintiff Jones

25   heard officers entering through the sally port. (SSF 29.) Plaintiff Jones heard inmates

26   yelling, including Plaintiff Billy R. Williams: "He yelled something like 'What are you

27   guys doing? Hey, I'm Inmate,' and he said his CDC number, 'and if you need a witness

28   on what they're doing, I'm in cell' -- the cell -- he said his cell number." (SSF 30.)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1    Some time later, an officer ordered the inmates on the ground to go back to their

2   cells. (SSF 31.) Plaintiff Jones stood up and began to walk towards his cell, as

3   instructed. (SSF 32.) Plaintiff Jones saw Plaintiff Deans, who was about 10 feet away

4   from him, hit by Defendant J. Salazar. (SSF 33.) Plaintiff Jones saw Plaintiff Deans fall

5   to the ground, after being hit. (SSF 34.)

6    Plaintiff Jones tried to get as far away from Defendant J. Salazar as possible but

7   was attacked as he walked past the tunnel, towards his cell. (SSF 35.) Plaintiff Jones was

8   about one-step past the sally port when he was ambushed by multiple officers, his hair

9   was grabbed from behind, and his head slammed to the concrete ground. (SSF 36.)

10   Defendant E. Cruz then got on top of Plaintiff Jones's back, grabbed his arms, and

11   twisted his arms behind his back, causing his right arm to "pop" or "snap." (SSF 37.)

12   Plaintiff Jones elbow was dislocated by Defendant E. Cruz's twisting. (SSF 38.)

13   Another officer had his knee pressed against Plaintiff Jones's face, pinning his head to

14   the ground. (SSF 39.) Defendant E. Cruz told Plaintiff Jones: "Stay still mother fucker."

15   (SSF 40.) Plaintiff Jones told Defendant E. Cruz that his twisting was breaking his arm.

16   (SSF 41.) Defendant E. Cruz applied handcuffs to Plaintiff Jones's arms. (SSF 42.)

17    Plaintiff Jones was taken to the gym, placed in a holding cell, and then,

18   approximately an hour later, taken to the hospital. (SSF 43.) Plaintiff Jones's right arm

19   was placed in a half-molded cast, wrapped, and put in a sling, the day after the attack.

20   (SSF 44.) Plaintiff Jones was required to wear the cast for a couple of months. (SSF 45.)

21    Plaintiff Jones prepared and submitted a CDCR Form 602 appeal concerning the

22   attack. (SSF 46.) Plaintiff Jones stated in his 602 appeal: "every one of the officers has

23   more than one staff attack on their [record] because thay dump on inmates and then

24   chard them with a staff asalt." (SSF 47 (*sic* throughout).) Plaintiff Jones exhausted his

25   602 appeal through the three levels of CDCR review. (SSF 48.) Shortly after submitting

26   the 602 appeal, Plaintiff Jones was called into the office of a RJDCF sergeant, who was

27   serving as an active lieutenant. (SSF 49.) A CDCR counselor was also present in the

28   office. (SSF 50.) During the meeting, the sergeant asked Plaintiff Jones if he thought he

3

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1   was a "tough guy" and asked Plaintiff Jones to "withdraw" his 602 appeal. (SSF 51.)

2   Plaintiff Jones declined, though, he was intimidated by the encounter and felt

3   discouraged from pursuing his 602 appeal. (SSF 52.) Subsequently, Plaintiff Jones was

4   required to spend about four months in the "hole" or administrative segregation. (SSF

5   53.)

6        Defendant Paramo "personally reviewed all reports of a use of force," including

7   the reports in this case, and determined that his "officers used appropriate force" against

8   Plaintiffs. (SSF 54.) Plaintiff Jones spoke with Defendant Daniel Paramo after he was

9   released from administrative segregation. (SSF 55.) Defendant Paramo personally told

10  Plaintiff Jones: "the officers don't do anything that you're saying that they're doing."

11  (SSF 56.)

12  **III.   STATEMENT OF PROCEDURAL FACTS**

13       On May 31, 2018, Plaintiffs Ronnie L. Moody, Gary T. Deans, Billy R. Williams,

14  and Donnel E. Jones filed the Complaint initiating this action. (ECF No. 1 [Compl.].)

15       On September 26, 2019, Plaintiffs filed the currently-operative First Amended

16  Complaint. (ECF No. 48 [FAC].)

17       On March 3, 2020, the Court granted a Fed. R. Civ. P. 12(b)(6) motion to dismiss,

18  and dismissed the following claims, with prejudice: (1) Plaintiffs' "Fourth Claim" for

19  alleged violations of the Americans with Disabilities Act; (2) Plaintiffs' "Fifth Claim"

20  for alleged violations of the Rehabilitation Act; and (3) Plaintiffs Moody and Deans's

21  "Second Claim" for alleged retaliation. (ECF No. 55 [Order].)

22       On March 9, 2020, Defendants filed the instant Fed. R. Civ. P. 56(c) motion for

23  summary judgment, seeking dismissal of the following claims: (1) Plaintiff Jones's

24  "First, Third, and Sixth Claims" for declaratory/injunctive relief alleged against

25  Defendant Paramo/Pollard; (2) Plaintiff Jones's "Second Claim" for alleged retaliation;

26  and (3) Plaintiffs Deans and Jones's "Third Claim" for alleged conspiracy. (ECF No. 56

27  [MSJ].)

28  \ \ \

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

## IV.    STATEMENT OF OPPOSITION

1.    Plaintiff Jones's equitable relief claims are not subject to dismissal because:

A.    An "official capacity" suit is "equivalent to a suit against the governmental entity itself." *Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2001). As a result, the "named official's personal involvement in the acts or omissions constituting the alleged constitutional violation" is insignificant, so long as the plaintiff identifies the "law or policy challenged as a constitutional violation" and "name[s] the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

B.    The record contains sufficient evidence of CDCR "policy or custom." *See*, *e.g.*, *Gomez v. Vernon*, 255 F.3d 1118, 1126-27 (9th Cir. 2001); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

C.    The CDCR Form 602 appeal submitted was sufficient to exhaust administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

D.    The unavailability of an administrative remedy precluded the exhaustion requirement. *See*, *e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Mills v. Mitchell*, 792 F. App'x 511, 511-12 (9th Cir. 2020).

2.    Plaintiff Jones's retaliation claims are not submit to dismissal because:

A.    The record contains sufficient evidence of Plaintiff Jones's placement in administrative segregation after reporting staff misconduct. *See*, *e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

B.    The unavailability of an administrative remedy precluded the exhaustion requirement. *See*, *e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Mills v. Mitchell*, 792 F. App'x 511, 511-12 (9th Cir. 2020).

3.    Plaintiffs Deans and Jones do not oppose the dismissal of any "conspiracy

5

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dep't of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

to retaliate" claims because:

A.    Plaintiff Deans's retaliation claim was previously dismissed by the Court, with prejudice (ECF No. 55 [Order] at 15:20-21:12), precluding his ability to pursue an associated "conspiracy to retaliate" claim based on the same underlying conduct.

B.    Plaintiff Jones does not allege any "conspiracy to retaliate" claim but, rather, proceeds on a conspiracy to use unreasonable force claim. (*See* ECF No. 48 [FAC] at 17:3-18:5 [¶¶113-117].)

## V.    ARGUMENT

A court may grant summary judgment upon a showing that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that it is entitled to summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-61 (1970). The burden then shifts to the nonmoving party to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## A.    EQUITABLE RELIEF

Plaintiff Jones seeks equitable relief in the form of declaratory and injunctive relief. (ECF No. 48 [FAC] at 14:12-20 [¶102] & 26:6-7 [Prayer ¶3].) In both the original and First Amended Complaints, Defendant Daniel Paramo, as warden of RJDCF, was named as a party-defendant in his "official capacity." (ECF No. 1 [Compl.] at 2:23-26 [¶8] & ECF No. 48 [FAC] at 3:4-8 [¶8].) However, "[e]ffective Monday, August 12, 2019, Mr. Marcus Pollard assumed the duties as the Warden" at RJDCF. (ECF No. 56-5 [Pollard Decl.] at 1:-27 [¶2]; *see also* <https://www.cdcr.ca.gov/facility-locator/rjd/>.)[4]

Accordingly, Defendant Pollard was "automatically substituted" in the place of Defendant Paramo "as a party" to this action when he assumed the duties as Warden of

---

[4] "[T]he court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (internal quotation marks & alteration omitted).

1  RJDCF, pursuant to Fed. R. Civ. P. 25(d), which provides:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

### 1.  Mootness

Defendants argue that Defendant Pollard's automatic substitution in the place of Defendant Paramo renders Plaintiff Jones's requested injunctive relief ineffective because "[Defendant] Paramo is no longer warden" and "[Plaintiff] Jones's allegations against [Defendant] Paramo are moot." (ECF No. 56 [MSJ] at 21:11-28.) Defendants cite no authority is support of this outcome, under these circumstances.

Defendants' argument misses the point of naming a party in an "official-capacity." As Plaintiffs previously explained (ECF No. 22 [Opp'n] at 10:16-27), Defendant Paramo was named as a party-defendant because, under 42 U.S.C. § 1983, "a State cannot be sued directly in its own name regardless of the relief sought." *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). The "official-capacity" pleading device permits "actions for prospective relief" but "are not treated as actions against the State," *see id.*—even though such an action is, for all practical purposes, "equivalent to a suit against the governmental entity itself." *Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2001). As a result, the "named official's personal involvement in the acts or omissions constituting the alleged constitutional violation" is insignificant, so long as the plaintiff identifies the "law or policy challenged as a constitutional violation" and "name[s] the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

Properly understood, Defendants Paramo or Pollard's "personal involvement" in alleged constitutional violations does not determine the viability or success of the "official-capacity" claims alleged. *See, e.g., Gomez*, 255 F.3d at 1127 ("it is unnecessary

1    to demonstrate that the decision-making official directly ordered each act carried out

2    under his edict"). Rather, the inclusion of Defendants Paramo or Pollard is primarily for

3    the purpose of "respond[ing] to injunctive relief." *See Hartmann*, 707 F.3d at 1127. To

4    this, Defendants have offered no argument that Defendant Pollard being "automatically

5    substituted" in Defendant Paramo's place precludes the equitable relief requested, were

6    it to be granted by the Court. *See*, *e.g.*, *Porter v. S. Nev. Adult Mental Health Servs.*,

7    2017 U.S. Dist. LEXIS 204740, at *44-45 (D. Nev. Dec. 13, 2017) (refusing to dismiss

8    "official-capacity" claims, where "defendants do not argue that [the state official] is not

9    in the position to respond to injunctive relief").

10           **2.     Policy Or Custom**

11           Defendants argue that, "[u]nder [Defendant] Pollard, there is no policy or custom

12   of excessive force, retaliation, or conspiracy to use excessive force or retaliate," by

13   citation only to self-serving evidence in the form of Defendant Pollard's own

14   declaration. (ECF No. 56 [MSJ] at 22:1-24:22.) Similarly, Defendants' argue that

15   Defendants Paramo and Pollard's personal participation in the alleged misconduct, or

16   lack thereof, precludes their "official-capacity" liability. (ECF No. 56 [MSJ] at 22:27-

17   23:9 & 24:15-25:20.) However, as explained above, whether the "policy or custom" at

18   issue was carried out <u>by</u> Defendant Paramo or Pollard is irrelevant. *See Hartmann*, 707

19   F.3d at 1127; *Gomez*, 255 F.3d at 1127. "[A]dministrators are liable in their official

20   capacities only if policy or custom played a part in the violation of federal law." *Gomez*,

21   255 F.3d 1126-27; *see also Rosenbaum v. City & County of San Francisco*, 484 F.3d

22   1142, 1153 (9th Cir. 2007) ("policy, plan, or a pervasive pattern."). "A policy or custom

23   may be found either in an affirmative proclamation of policy or in the failure of an

24   official to take any remedial steps after the violations"—*e.g.*, "turn[ing] a-blind-eye" or

25   "failure to reprimand or discharge." *Id*. at 1127 (quotation marks & citations omitted).

26           Defendants argue that the July 17, 2017, incidents giving rise to this action are not

27   sufficient to demonstrate a "policy or custom" because they do not constitute "multiple

28   instances of known constitutional violations that went unredressed." (ECF No. 56 [MSJ]

1    at 23:10-14.) However, Defendants' argument seeks to impose a "granular view" of the

2    incidents, which "loses the forest for the trees." *See*, *e.g.*, *Butcher v. City of Marysville*,

3    398 F. Supp. 3d 715, 724 (E.D. Cal. 2019); *Allen v. City of Muskogee*, 119 F.3d 837,

4    844-45 (10th Cir. 1997) ("A plaintiff can properly rely on the single incident if there is

5    other evidence of inadequate training" during the course of that *same* "single incident");

6    *Michael v. County of Nassau*, 2010 U.S. Dist. LEXIS 82764, at *11 (E.D.N.Y. Aug. 11,

7    2010) (despite "[t]he conduct alleged in the [c]omplaint t[aking] place over several

8    hours," the "[p]laintiff ha[d] not alleged one isolated incident of police misconduct" but,

9    rather, "multiple incidents over a long, continuous time period.").

10       For example, in *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001), the court found

11   the existence of a "policy or custom" where prison "administrators' failure to investigate

12   the retaliation complaints, the lack of reprimand or discipline for the officers involved

13   even when their supervisors were aware of the complaints, and the delegation of

14   investigation to officers involved in the grievances." *Id.* at 1127. "This turn a-blind-eye

15   approach d[id] not insulate the [prison]. On the contrary, [it was] more than sufficient to

16   support the conclusion that the retaliatory acts were condoned by the officials, sufficient

17   to 'make clear to officers that … they could get away with anything.'" *Id.* (quoting

18   *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991)). "The [prison]'s failure

19   to investigate or correct constitutional violations support[ed] the … finding that there

20   was a policy or custom that led to violation of the inmates' rights." *Id.*

21       Similarly, in *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986), several prisoners,

22   including the plaintiff, were "seriously injured" during a "shakedown" carried out by a

23   prison guard, "under orders of his superiors." *Id.* at 784. Such orders were sufficient to

24   constitute a "policy or custom," where "the decision to take the action [wa]s made by an

25   authorized governmental decision maker and the action violate[d] an individual's

26   constitutional rights." *Id.* at 784 & n.6. In addition, a "[p]olicy or custom may be

27   inferred if, after the shakedown, the prison officials took no steps to reprimand or

28   discharge the guards, or if they otherwise failed to admit the guards' conduct was in

9

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1  error." *Id*. at 784.

2      In this case, there is sufficient evidence that Defendant CDCR and its RJDCF

3  administrators either "turn[ed] a-blind-eye," *see Gomez*, 255 F.3d at 1127, or "took no

4  steps to reprimand or discharge the guards, or … otherwise failed to admit the guards'

5  conduct was in error," *see McRorie*, 795 F.2d at 784. Specifically, Defendant Paramo

6  "personally reviewed all reports of a use of force," including the reports in this case, and

7  determined that his "officers used appropriate force" against Plaintiffs. (SSF 54.)

8  Additionally, Defendant Paramo went out of his way to tell Plaintiff Jones, personally:

9  "the officers don't do anything that you're saying that they're doing." (SSF 56.)

10      "[A] policymaker's after-the-fact approval of a subordinate's conduct may be

11  used as evidence that a municipality had a pre-existing policy that caused the alleged

12  constitutional violations." *Silva v. San Pablo Police Dep't*, No. 18-16453, 2020 U.S.

13  App. LEXIS 7718, at *5 (9th Cir. Mar. 9, 2020) ("official policymaker" "reviewed and

14  approved of the officers' conduct" because she "'believe[d] that it was within policy and

15  training'"). This constitutes "ratification" of the officers' actions which, if found to be

16  unconstitutional, may also give rise to "policy or custom" liability. *See*, *e.g.*, *Rodriguez*

17  *v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018); *Blankenhorn v. City of*

18  *Orange*, 485 F.3d 463, 485-86 (9th Cir. 2007); *Watkins v. City of Oakland*, 145 F.3d

19  1087, 1093-94 (9th Cir. 1998); *Larez*, 946 F.2d at 646-47 ("[official]'s statements,

20  coming from a final policymaker on police matters, also properly could have been

21  considered to represent the [public entity]'s policy or custom of condonation of, and

22  acquiescence in, the use of excessive force by its officers.").

23      Finally, Defendants argue a lack of "causation" because "[Plaintiff] Jones cannot

24  show that any improper policy or custom … caused his injuries in 2017." (ECF No. 56

25  [MSJ] at 24:15-22.) "Normally, the question of whether a policy or custom exists would

26  be a jury question." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Defendants'

27  argument fails to appreciate the nature and purpose of so-called "post-event evidence,"

28  such as the subsequent ratification of a subordinate's use of force. "'[P]ost-event

evidence' may be used to prove the existence of a municipal policy in effect at the time that [the plaintiff] was [harmed]." *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997). In other words, "[w]hen a [public entity] continues to turn a blind eye to severe violations of inmates' constitutional rights—despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id*. at 519. "If a municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct, surely its failure even after being sued to correct a blatantly unconstitutional course of treatment … is even more persuasive evidence of deliberate indifference or of a policy encouraging such official misconduct." *Id*. at 520 (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985)); *see also Dorger v. City of Napa*, 2012 U.S. Dist. LEXIS 124551, at *14 (N.D. Cal. Aug. 31, 2012) ("ratification of conduct, and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident").

As explained by one district court:

> [I]t is not a mere ratification, but rather the [official]'s pronouncement that [the officers'] alleged use of force was 'in compliance with Department policy' that gives rise to a [policy or custom] claim. This is tantamount to the announcement or confirmation of a policy… The [official]'s finding that [the officers'] use of force was 'in compliance' with the [public entity]'s policies is more than sufficient to raise a genuine issue of material fact with respect to whether the [public entity] had a policy of using the force [the officers] did in this case. Although the finding was made after the incident, it constitutes clear evidence from which a rational jury could infer that the policy existed before the incident and therefore was the moving force that caused the injury. If the jury ultimately concludes that [the officers] used excessive force and that the use of force comported with the [public entity]'s policies, it would be [appropriate] to hold the [public entity] liable based on its policy promoting that use force.

*Rosales v. City of Chico*, 2015 U.S. Dist. LEXIS 142577, at *20-21 (E.D. Cal. Oct. 20, 2015) (internal quotation marks & citation omitted).

11

### 3.   PLRA Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[5] "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). "[D]efendants must produce evidence proving failure to exhaust in order to carry their burden." *Id*.

In this case, the CDCR has an administrative grievance procedure for prisoner grievances. *See* Cal. Code Regs., tit. 15, § 3084.1. The process is initiated by submitting a CDCR Form 602. *Id*. at § 3084.2(a). There are three levels of appeal, *id*. at § 3084.7, and "[a]dministrative exhaustion within California requires the completion of the third level of administrative review," *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

#### a.   Involved Staff Members

California regulations require that "[t]he inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. . . If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Cal. Code Regs., tit. 15, § 3084.2(a)(3).

Defendants argue that "[Plaintiff] Jones did not exhaust his administrative remedies against either [Defendants Paramo or Pollard]" because "[Plaintiff] Jones did not file a prison appeal against the warden" and, as a result, cannot pursue the equitable relief claims. (ECF No. 56 [MSJ] at 29:1-32:7.) Defendants' argument fails where, again, they fail to appreciate the nature of the "official-capacity" pleading device. The

---

[5] By its express terms, "[t]he PLRA exhaustion requirement does not apply to state law claims." *Steward v. County of Santa Clara*, 2020 U.S. Dist. LEXIS 32119, at *2 (N.D. Cal. Feb. 25, 2020); *Martinez v. State of California*, 2009 U.S. Dist. LEXIS 18688, at *8 (E.D. Cal. Mar. 11, 2009).

12

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1    point of an "official-capacity" party-defendant is <u>not</u> that that official had some

2    "personal involvement in the acts or omissions constituting the alleged constitutional

3    violation…" *See Hartmann*, 707 F.3d at 1127. Rather, it is "equivalent to a suit against

4    the governmental entity itself." *Gomez*, 255 F.3d at 1126. Properly understood, Plaintiff

5    Jones's equitable relief claims are <u>not</u> functionally asserted against Defendants Paramo

6    or Pollard but, rather, "against the governmental entity itself." *See id.*

7          As a result, Plaintiff Jones was not required to identify Defendants Paramo or

8    Pollard as "staff member(s) involved" in his grievances under Cal. Code Regs., tit. 15, §

9    3084.2(a)(3) because his grievances were <u>not</u> based on their "personal involvement,"

10   *Hartmann*, 707 F.3d at 1127, but, rather, were "against the governmental entity itself,"

11   *Gomez*, 255 F.3d at 1126. But who were the supervisory personnel responsible for

12   operating RJDCF in such a deficient manner that resulted in Plaintiff Jones's injuries?

13   Plaintiff Jones did not know. So he stated the problem in such a manner "that would

14   assist the appeals coordinator in making a reasonable attempt to identify the staff

15   member(s) in question," as a required. *See* Cal. Code Regs., tit. 15, § 3084.2(a)(3). In

16   Plaintiff Jones's own words:

17   > "every one of the officers has more than one staff attack on their [record]
18   > because thay dump on inmates and then chard them with a staff asalt."

19   (SSF 47 (*sic* throughout).) The nature of Plaintiff Jones's grievance is clear: this is not

20   an isolated incident—all officers at RJDCF attack inmates and then fabricate staff

21   assault charges against the inmates. In other words, this is not merely an individualized

22   problem. Rather, RJDCF personnel's misconduct is so pervasive that "every one of the

23   officers" has engaged in such misconduct. This is the essence of a "policy or custom"

24   allegation. *See, e.g., Gomez*, 255 F.3d at 1127; *McRorie*, 795 F.2d at 784.

25         Even if Plaintiff Jones's grievance was not sufficiently detailed under Cal. Code

26   Regs., tit. 15, § 3084.2(a)(3), Defendants could—and should—have resolved any

27   vagueness during the exhaustion process. But they did not, where Plaintiff Jones's

28   grievance was exhausted. (*See* SSF 48.) "When prison officials opt not to enforce a

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1    procedural rule but instead decide an inmate's grievance on the merits, the purposes of

2    the PLRA exhaustion requirement have been fully served: prison officials have had a

3    fair opportunity to correct any claimed deprivation and an administrative record

4    supporting the prison's decision has been developed." *Reyes v. Smith*, 810 F.3d 654,

5    657-58 (9th Cir. 2016).

6             b.    *Facts Known And Available*

7           California regulations require that "[t]he inmate or parolee shall state all facts

8    known and available to him/her regarding the issue being appealed at the time of

9    submitting the Inmate/Parolee Appeal form…" Cal. Code Regs., tit. 15, § 3084.2(a)(4).

10          Defendants argue that "[Plaintiff] Jones did not exhaust his administrative

11   remedies against either [Defendants Paramo or Pollard]" because "[n]othing in

12   [Plaintiff] Jones's appeals put prison officials on notice that [he] was claiming that there

13   was a policy or custom of excessive force or retaliation" and, as a result, cannot pursue

14   the equitable relief claims. (ECF No. 56 [MSJ] at 29:1-32:7.) Defendants' argument

15   fails where Plaintiff Jones did, in fact, "state all facts known and available to him." As

16   to the policy or custom, Plaintiff Jones stated in his own words:

17
18        "every one of the officers has more than one staff attack on their [record]
          because thay dump on inmates and then chard them with a staff asalt."

19   (SSF 47 (*sic* throughout).) The nature of Plaintiff Jones's grievance is clear: this is not

20   an isolated incident—all officers at RJDCF attack inmates and then fabricate staff

21   assault charges against the inmates. In other words, this is not merely an individualized

22   problem. Rather, RJDCF personnel's misconduct is so pervasive that "every one of the

23   officers" has engaged in such misconduct. This is the essence of a "policy or custom"

24   allegation. *See, e.g.*, *Gomez*, 255 F.3d at 1127; *McRorie*, 795 F.2d at 784.

25          Even if Plaintiff Jones's grievance was not sufficiently detailed under Cal. Code

26   Regs., tit. 15, § 3084.2(a)(4), Defendants could—and should—have resolved any

27   vagueness during the exhaustion process. But they did not, where Plaintiff Jones's

28   grievance was exhausted. (*See* SSF 48.) "When prison officials opt not to enforce a

14

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1   procedural rule but instead decide an inmate's grievance on the merits, the purposes of

2   the PLRA exhaustion requirement have been fully served: prison officials have had a

3   fair opportunity to correct any claimed deprivation and an administrative record

4   supporting the prison's decision has been developed." *Reyes*, 810 F.3d at 657-58.

5          **4.      Unavailability Of Administrative Remedies**

6          "The text of the PLRA requires that a prisoner exhaust *available* remedies before

7   bringing an action related to prison conditions." *Mills v. Mitchell*, 792 F. App'x 511,

8   511 (9th Cir. 2020). Accordingly, "an inmate is required to exhaust those, but only

9   those, grievance procedures that are capable of use to obtain some relief for the action

10  complained of." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quotation marks omitted).

11  "Despite being officially available to an inmate, an administrative remedy is not capable

12  of use to obtain relief when: (1) the procedure 'operates as a simple dead end—with

13  officers unable or consistently unwilling to provide any relief to aggrieved inmates,' (2)

14  where it is 'so opaque that it becomes, practically speaking, incapable of use,' or (3)

15  'when prison administrators thwart inmates from taking advantage of a grievance

16  process through machination, misrepresentation, or intimidation.'" *Mills*, 792 F. App'x

17  at 511-12 (quoting *Ross*, 136 S. Ct. at 1859-60).

18         Even if Plaintiff Jones's grievance was not sufficient, Plaintiff Jones was subject

19  to "intimidation" by Defendant Rodriguez when he submitted his grievance concerning

20  the July 17, 2017, incidents and, later, severely punished. (SSF 49-53.) These actions

21  discouraged Plaintiff Jones from pursuing a further grievance for retaliation because,

22  based on these experiences, an administrative remedy was not "available." *See Ross*, 136

23  S. Ct. at 1859-60.

24  **B.     RETALIATION**

25         "Within the prison context, a viable claim of First Amendment retaliation entails

26  five basic elements: (1) An assertion that a state actor took some adverse action against

27  an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

28  chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1    reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

2    567-68 (9th Cir. 2005) (internal fn. omitted).

3        **1.    Protected Activity**

4        Defendants argue that "[t]here is no evidence that [Plaintiff] Jones engaged in any

5    protected activity sufficient to justify a claim for retaliation." (ECF No. 56 [MSJ] at

6    27:8-18.) In fact, Plaintiff Jones did file a grievance following the July 17, 2017,

7    incident. (*See* SSF 46.) Thereafter, Plaintiff Jones was subject to intimidation by

8    supervisory staff, placed in administrative segregation, and his release from prison

9    delayed. (SSF 49-53) Placement in administrative segregation constitutes an adverse

10   action forming the basis of a retaliation claim. *See Watison v. Carter*, 668 F.3d 1108,

11   1115 (9th Cir. 2012); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). "[A]

12   corrections officer may not retaliate against a prisoner for exercising his First

13   Amendment right to report staff misconduct." *Shepard v. Quillen*, 840 F.3d 686, 688

14   (9th Cir. 2016); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

15       Defendants argue that Defendant Rodriguez is responsible for any retaliation

16   against Plaintiff Jones but that none of the "moving Defendants had anything to do with

17   [Plaintiff] Jones's appeals, or were involved in threatening him to withdraw his appeal."

18   (ECF No. 56 [MSJ] at 27:8-18.) *See also Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir.

19   2019) ("motive may be shown with direct or circumstantial evidence"); *Watison*, 668

20   F.3d at 1114 ("chronology of events" relevant); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th

21   Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

22   intent"). Plaintiff Jones agrees that his retaliation claim is alleged solely against

23   Defendant Rodriguez. (*See* ECF No. 48 [FAC] at 13:16-25 [¶100] & 16:1-17:2 [¶¶108-

24   112].)

25       **2.    Unavailability Of Administrative Remedies**

26       Defendants argue that, "[b]ecause [Plaintiff] Jones failed to allege retaliation in

27   his appeals, he failed to exhaust his retaliation claim…" (ECF No. 56 [MSJ] at 32:8-

28   33:18.) Generally, Plaintiffs agree that "retaliation" was not alleged in Plaintiff Jones's

1  grievances. (*See* Plaintiffs' Response and Objections to Defendants' Statement of

2  Undisputed Material Facts ("UMF") 21.) However, that does not preclude Plaintiff

3  Jones's retaliation claims.

4        "[A]n inmate is required to exhaust those, but only those, grievance procedures

5  that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S.

6  Ct. at 1859 (quotation marks omitted). "Despite being officially available to an inmate,

7  an administrative remedy is not capable of use to obtain relief … 'when prison

8  administrators thwart inmates from taking advantage of a grievance process through

9  machination, misrepresentation, or intimidation.'" *Mills*, 792 F. App'x at 511-12

10  (quoting *Ross*, 136 S. Ct. at 1859-60).

11        In this case, Plaintiff Jones was subject to "intimidation" by Defendant Rodriguez

12  when he submitted his grievance concerning the July 17, 2017, incidents and, later,

13  severely punished. (SSF 49-53.) These actions discouraged Plaintiff Jones from

14  pursuing a further grievance for retaliation because, based on these experiences, an

15  administrative remedy was not "available." *See Ross*, 136 S. Ct. at 1859-60.

16  **C.**    **CONSPIRACY**

17        To state a claim of conspiracy under 42 U.S.C. § 1983, a plaintiff must

18  demonstrate an agreement or a meeting of the minds to violate the plaintiff's

19  constitutional rights. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).While

20  "[c]onspiracy is not itself a constitutional tort under § 1983," it "may, however, enlarge

21  the pool of responsible defendants by demonstrating their causal connections to the

22  violation; the fact of the conspiracy may make a party liable for the unconstitutional

23  actions of the party with whom he has conspired." *Lacey v. Maricopa County*, 693 F.3d

24  896, 935 (9th Cir. 2012).

25      **1.**    **Plaintiff Deans**

26        The Court previously dismissed Plaintiff Deans's retaliation claim with prejudice.

27  (ECF No. 55 [Order] at 15:20-21:12.) Defendants argue that, "[w]ithout an underlying

28  retaliation claim, [Plaintiff] Deans … cannot prove a claim for conspiracy to retaliate,

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
*Moody v. Cal. Dep't of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

1  and the Court should grant summary judgment." (ECF No. 56 [MSJ] at 28:8-10.)

2       Plaintiffs agree and do not oppose the dismissal of any "claim for conspiracy to

3  retaliate" alleged by Plaintiff Deans. However, Plaintiffs wish to emphasize that

4  Defendants have not moved to dismiss Plaintiff Deans's alleged claims for conspiracy to

5  use unreasonable force (ECF No. 48 [FAC] at 17:3-18:5 [¶¶113-117]) and, as a result,

6  those claims remain extant.

7       **2.**    **Plaintiff Jones**

8       Plaintiff Jones's retaliation claim is alleged solely against Defendant Rodriguez.

9  (*See* ECF No. 48 [FAC] at 13:16-25 [¶100] & 16:1-17:2 [¶¶108-112].) Because only one

10  party-defendant is allegedly liable based on Plaintiff Jones's alleged retaliation claim,

11  there can be no conspiracy based on "an agreement among the parties," *Mendocino*

12  *Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999), where "[a] civil

13  conspiracy is a combination of two or more persons," *Gilbrook v. City of Westminster*,

14  177 F.3d 839, 856 (9th Cir. 1999).

15       Accordingly, Plaintiff Jones does not allege any "conspiracy to retaliate claim."

16  (*See* ECF No. 56 [MSJ] at 32:10-13.) Rather, Plaintiff Jones alleges only a conspiracy to

17  use unreasonable force claim. (*See* ECF No. 48 [FAC] at 17:3-18:5 [¶¶113-117].)

18  Plaintiffs wish to emphasize that Defendants have not moved to dismiss Plaintiff

19  Deans's alleged claims for conspiracy to use unreasonable force and, as a result, those

20  claims remain extant.

21  \ \ \

22  \ \ \

23  \ \ \

24  \ \ \

25  \ \ \

26  \ \ \

27  \ \ \

28  \ \ \

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Moody v. Cal. Dept' of Corr. & Rehab.*, United States District Court, Southern District of California, Case No. 3:18-cv-01110-WQH-AGS

# VI.   <u>CONCLUSION</u>

For the reasons stated, Plaintiffs respectfully request the Court to deny Defendants' Fed. R. Civ. P. 56(c) motion for summary judgment, and set this matter for a jury trial on the remaining claims.

Dated: April 6, 2020

Respectfully Submitted,
LAW OFFICE OF MARK E. MERIN

By: _____
    Mark E. Merin
    Paul H. Masuhara

    Attorneys for Plaintiffs
    RONNIE L. MOODY, GARY T. DEANS,
    BILLY R. WILLIAMS, and DONNEL E. JONES

19