1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10   RONNIE L. MOODY, GARY T.              Case No.:  18cv1110-WQH-AGS
     DEANS, BILLY R. WILLIAMS,
11   and DONNEL E. JONES,                  **ORDER**

12                          Plaintiffs,

13   v.

14
     RODRIGUEZ, J. MCGEE, J.
15   SALAZAR, D. RAMOS,
     ADAMS, J. HERRERA, W.
16   EDROZO, E. CRUZ, J. DURAN,
     AVILA, I. BRAVO, and DOES 1-
17   50,

18                          Defendants.

19

20   HAYES, Judge:

21         The matter before the Court is the Motion for Partial Summary Judgment (ECF No.

22   90) filed by Defendants McGee, Salazar, Ramos, Edrozo, Cruz, Duran, and Bravo

23   (collectively, "Defendants").[1]

24

25   _____

26   [1] The parties do not assert that any claims against Defendants Rodriguez, Adams, Herrera, or Avila remain
     to be tried. These claims will be dismissed with prejudice pursuant to Civil Local Rule 16.1 prior to trial.
27   (*See* March 28, 2022, Order, ECF No. 88 at 2 ("For each claim listed in Section II of the pretrial order,
     the proposed amended pretrial order shall separately identify as to each Plaintiff the specific Defendant or
28   Defendants against whom the claim is asserted. Any claim in the First Amended Complaint that is not

                                           1

## I.   BACKGROUND

On May 31, 2018, Plaintiffs Moody, Deans, Williams, and Jones (collectively, "Plaintiffs") initiated this action by filing a Complaint against the California Department of Corrections and Rehabilitation and numerous correctional officers at Richard J. Donovan Correctional Facility, where Plaintiffs were incarcerated. (ECF No. 1.) The Complaint alleged that Defendants used unreasonable force against Plaintiffs, interfered with Plaintiffs' ability to submit grievances and complaints regarding the use of force, and retaliated against Plaintiffs. On September 26, 2019, Plaintiffs filed the operative First Amended Complaint ("FAC"). (ECF No. 48.)

On March 24, 2022, the Court conducted a pretrial conference in this case. (ECF No. 87.) After the pretrial conference, the Court issued an Order requiring the parties to lodge a proposed amended pretrial order that "separately identif[ies] as to each Plaintiff the specific Defendant or Defendants against whom the claim is asserted." (ECF No. 88 at 2.) On April 15, 2022, the parties lodged a proposed amended pretrial order that reflected disagreement over the claims alleged in the FAC and the claims remaining to be tried. In response, on April 25, 2022, the Court issued an Order that stated:

> To the extent that Defendants seek judgment on claims asserted by Plaintiffs in the proposed amended pretrial order on the basis that they are unsupported by facts or precluded/abated by the Court's prior orders, Defendants must file a motion. In the interest of expediting the litigation and clarifying the issues for trial, the Court finds good cause to extend the time for the parties to file additional motions for summary judgment.

(ECF No. 89 at 2.)

On May 16, 2022, Defendants filed the Motion for Partial Summary Judgment. (ECF No. 90.) On May 30, 2022, Plaintiffs filed a Response in opposition to the motion. (ECF No. 91.) On June 6, 2022, Defendants filed a Reply. (ECF No. 92.) On September 8, 2022,

listed in the pretrial order will be dismissed with prejudice pursuant to Civil Local Rule 16.1(f)(6)(c)(2).").)

the Count heard oral argument on the Motion for Partial Summary Judgment. (ECF No. 101.)

## II.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.").

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

## III.    DISCUSSION

### A. Plaintiff Jones—Recoverable Damages

Plaintiff Jones died on December 31, 2020, from causes unrelated to this action. (*See* ECF No. 72-2 at 2.) On February 3, 2022, the Court granted a motion to substitute Jones' son in his place and dismissed Jones' claims for intentional infliction of emotional distress and pain, suffering, or disfigurement damages pursuant to California's survival statute. (*See* ECF No. 85.) Jones brings the following remaining claims against each Defendant: (1) excessive force in violation of 42 U.S.C. § 1983; (2) violation of the Bane Act, California Civil Code Section 52.1; (3) assault and battery; and (4) negligence.

Defendants contend that "there are no compensatory damages for Jones to recover" because the Court has dismissed Jones' "claims for pain, suffering, or disfigurement" damages and Jones "did not disclose any pre-death economic losses." (ECF No. 90 at 16.) Defendants contend that Jones is not entitled to statutory penalties or punitive damages in the absence of compensatory damages. Defendants contend that "nominal damages are precluded when there is no economic injury." (ECF No. 92 at 2.) Defendants contend that "because no recoverable damages remain, summary judgment should be granted for Defendants on all of Jones'[] claims." (ECF No. 90 at 17.) Defendants contend that "Jones lacks standing because he does not have an injury-in-fact that is redressable by the [C]ourt." *Id.* at 19.

Jones contends that he is entitled to nominal damages and an award of attorney's fees. Jones contends that his request for statutory penalties under the Bane Act claim

remains extant in the absence of compensatory damages. Jones contends that he has standing based on "injuries which are redressable, including by an award of nominal damages and/or statutory penalties." (ECF No. 91 at 12.)

The Court's February 3, 2022, Order dismissed Jones' claims for "pain, suffering, or disfigurement damages under all of [Jones'] causes of action" pursuant to California's survival statute, California Civil Procedural Code Section 377.34. (ECF No. 85 at 8.) It is undisputed that that there is no evidence of any economic loss to Jones in this case. As a result, there are no actual damages for Jones to recover.

Despite Jones' lack of actual damages, an award of nominal or statutory damages "satisfies the redressability requirement" for constitutional standing. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 801 (2021); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) ("The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings."); *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."). However, to the extent that proof of actual damages is a substantive element of Jones' claims, Defendants are entitled to summary judgment.

"A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm." *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000). "[N]ominal damages must be awarded if a plaintiff proves a violation of his constitutional rights." *George v. City of Long Beach*, 973 F.2d 706, 708 (9th Cir. 1992). Courts in this circuit have applied this rule to § 1983 excessive force claims, including cases where it was determined that compensatory damages were precluded by California's survival statute. *See Mahach-Watkins v. Depee*, 593 F.3d 1054, 1060 (9th Cir. 2010) (affirming award of attorney's fees based on award of nominal damages where district court had previously determined that "compensatory damages were not available to the estate on the § 1983 excessive force claim" due to the

survival statute); *see also Morales v. Fry*, 873 F.3d 817, 827 (9th Cir. 2017) (affirming award of attorney's fees based on award of nominal damages in excessive force case); *Hunter v. County of Sacramento*, No. 6-cv-457-GEB-EFB, 2013 WL 5597134, at *5 (E.D. Cal. Oct. 11, 2013) (collecting cases in which only nominal damages were awarded on excessive force claims). Nominal damages are available on Jones' § 1983 excessive force claim in the absence of any actual damages.

The Bane Act permits individuals whose rights have been interfered with to institute "a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief." Cal. Civ. Code § 52.1(c). Section 52 "allows recovery for 'actual damages' and treble damages, 'but in no case less than four thousand dollars.'" *Klein v. City of Laguna Beach*, 810 F.3d 693, 696 n.2 (9th Cir. 2016) (quoting *id.* § 52(a)). As a result, a plaintiff may pursue the statutory minimum damages of $4,000 in the absence of demonstrating any actual damages. *See Klein*, 810 F.3d at 699 (providing that "the statute guarantees a minimum of $4,000 regardless of actual damages"); *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985) (same under a previous version of the statute); *see also* Jud. Council of Cal. Civ. Jury Instruction 3066 ("Under the Unruh Act, if only the statutory minimum damages of $4,000 is sought, it is not necessary to prove harm and causation. Presumably, the same rule applies under the Bane Act as the statutory minimum of section 52(a) should be recoverable." (citation omitted)). Statutory damages (described as "nominal" in *Klein*) are available on Jones' Bane Act claim in the absence of any actual damages.

The torts of assault and battery each require that the plaintiff be "harmed." *So v. Shin*, 212 Cal. App. 4th 652, 668-69 (2013). However, the requirement of "harm" in the context of assault and battery claims only refers to "the slightest degree of touching." *In re B.L.*, 239 Cal. App. 4th 1491, 1495 (2015); *see also People v. Shockley*, 58 Cal. 4th 400, 404 (2013) (stating that under a battery claim the force "need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark"); *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 232 (1983) (stating that assault does

not require any tangible physical injury). As a result, the torts of assault and battery permit recovery of nominal damages based on an "invasion of a legally protected interest," even in the absence of any tangible "detrimental effect on a person." *Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1661 (1994) (distinguishing between "causes of action [that] permit recovery of nominal damages" absent any detrimental effect and those, like negligence, that require actual damage); *see People v. Smith*, 57 Cal. App. 4th 1470, 1487 n.11 (1997) (stating that the required injury for battery is "any invasion of the legally protected interest in bodily security"). The Court concludes that nominal damages are available on Jones' assault and battery claims in the absence of any actual damages.

Under California law, a plaintiff must show "damages or injuries" as an element of a claim for negligence. *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012). In the absence of "actual damage … nominal damages are not awarded" because damages are "necessary to a cause of action in negligence." *Duarte*, 22 Cal. App. 4th at 1661-62 (quotation omitted). The Court grants summary judgment in favor of Defendants on Jones' negligence claim because Jones is unable to demonstrate any actual damages. *See Estate of Mejia v. Archambeault*, No. 20-cv-2454-MMA (KSC), 2021 WL 4428990, at *7 (S.D. Cal. Sept. 27, 2021) (dismissing negligence and other claims in survival action because "Plaintiffs fail to allege recoverable damages"); *Berkley v. Dowds*, 152 Cal. App. 4th 518, 530 (2007) (affirming dismissal of intentional infliction of emotional distress claim in survival action because the claim did not "allege a wrong for which [the plaintiff] suffered a compensable injury"); *Marchesano v. Dekkers*, No. B180297, 2006 WL 1351474, at *6 (Cal. Ct. App. May 18, 2006) (affirming dismissal of negligence claim in survival action because "without damages, no cause of action was stated for negligence").

Defendants are granted summary judgment on Jones' negligence claim on the basis that Jones cannot prove any actual damage. Defendants' request for summary judgment on the basis that Jones lacks recoverable damages is otherwise denied.

///

///

**B. Absence of Evidence for Other Claims**

    **1. Plaintiff Moody**

Plaintiff Moody brings the following remaining claims against each Defendant: (1) excessive force in violation of § 1983; (2) violation of the Bane Act; (3) assault and battery; (4) intentional infliction of emotional distress; and (5) negligence.

Defendants contend that Edrozo, Cruz, Duran, and Bravo are entitled to summary judgment on each of Moody's claims because "there is an absence of evidence to create a genuine dispute of fact whether [these Defendants] were involved with the Moody incident." (ECF No. 90 at 20.) Defendants contend that "being a bystander is insufficient for integral-participant liability" (ECF No. 92 at 6), and that "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting," *id.* at 11.

Moody contends that there is evidence that "Cruz and others were present, prior to Moody's beating" and that "other [unidentified] officers beat Moody in addition to Officers McGee, Salazar, [and] Ramos." (ECF No. 91 at 14.) Moody contends that under his claims, "the presence of an officer at the scene may constitute sufficient evidence for a jury to infer that the officer participated in an unlawful beating that was shown to have occurred." *Id.* at 13-14. Moody contends that Edrozo, Cruz, Duran, and Bravo are also liable for aiding and abetting the use of excessive force and for breaching a duty to protect.

A defendant's individual liability under § 1983 is predicated on the defendant's "integral participation" in the alleged violation. *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996). This does not require that a defendant's "actions themselves rise to the level of a constitutional violation," *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004), but the defendant must have "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).

A defendant's participation in a violation is also required to establish personal liability under Moody's state law claims. *See Susag v. City of Lake Forest*, 94 Cal. App.

4th 1401, 1412 (2002) ("[I]t appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct."); *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1085 (2003) (stating that the Bane Act "permits an individual to sue for damages where his or her constitutional rights are violated"); *see also Penny v. City of Los Angeles*, No. CV 20-7211 DMG (MAAx), 2022 WL 2069132, at *14 (C.D. Cal. May 9, 2022) (stating that a plaintiff's "negligence claims rise and fall to the same degree as their Fourth Amendment, Bane Act, and intentional tort claims" with the exception that negligence does not incorporate qualified immunity or a reckless disregard standard). A person may be liable for aiding and abetting the commission of an intentional tort in California "if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 879 (2007) (quotation omitted).

Moody testified that on July 17, 2017, he and a counselor at the RJ Donovan Correctional Facility named Fuerte got into a "physical altercation." (ECF No. 91-1 at 9.) Deans testified that after Moody "jumped on" Fuerte, an officer fired a "block gun" containing a rubber bullet or other nonlethal ammunition at Moody. *Id.* at 31, 41-42; *see also id.* at 77-78 (Williams' testimony). Deans and Williams testified that fifty or more officers entered the building, including McGee, Salazar, Ramos, Cruz, and Duran in response to the altercation. *Id.* at 43, 82. Moody, Deans, and Williams testified that some of the officers handcuffed Moody, pepper sprayed him, and hit and kicked him while he was restrained. *Id.* at 16, 32, 75. Moody testified that he was not able to identify any of the officers involved in the altercation. *Id.* at 16. Moody filed an administrative appeal that identifies officers "McGee" and "Salazar," as participants in the altercation. (ECF No 90-5 at 9.) Deans testified that Salazar hit Moody with a baton and that McGee kicked Moody in the face. (ECF No. 91-1 at 46, 49.) Williams testified that he saw McGee, Salazar, and Ramos kick Moody in the face. *Id.* at 86. Deans and Williams testified that they could not

1    identify any other officers who participated in the altercation. *Id.* at 50, 88. Deans testified

2    that other officers formed a perimeter "just so things wouldn't get out of hand." *Id.* at 46,

3    50. Edrozo and Bravo each testified that they were not in the building at the time of the

4    altercation. (ECF Nos. 90-9 at 5-7; 90-12 at 5-6.) Cruz and Duran each testified that they

5    did not participate in the altercation and were engaged watching other inmates after

6    entering the building. (ECF Nos. 90-10 at 6; 90-11 at 6.)

7         The uncontroverted evidence demonstrates that Edrozo and Bravo were not in the

8    building at the time of the Moody altercation. While Plaintiffs provide evidence that Cruz

9    and Duran were in the building, there is no evidence that Cruz or Duran participated in the

10   use of force. The presence of Cruz and Duran at the scene of the altercation, absent any

11   evidence of individual participation, is insufficient to establish liability under § 1983. *See*

12   *Chuman*, 76 F.3d at 294 ("[W]e do not read *Melear* to allow group liability in and of itself

13   without individual participation in the unlawful conduct …. Being a mere bystander [is]

14   insufficient … The underlying problem with a 'team effort' theory is that it is an improper

15   alternative ground for liability …. In essence, the 'team effort' standard allows the jury to

16   lump all the defendants together, rather than require it to base each individual's liability on

17   his own conduct."); *cf. Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003)

18   (reversing a grant of summary judgment because "[e]ven though [the plaintiff] has not been

19   able to identify precisely which officer delivered which alleged blow or use of force," he

20   "has done more than simply place the officers at the scene of the altercation and assert a

21   group liability theory"—the plaintiff presented evidence that the defendants "were

22   involved in the altercation and that they exerted some physical force on [the plaintiff]").

23   The lack of evidence that Edrozo, Cruz, Duran, and Bravo participated in the altercation or

24   gave substantial assistance to those involved also precludes their liability on Moody's state

25   law claims. The Court grants summary judgment in favor of Edrozo, Cruz, Duran, and

26   Bravo on each of Moody's claims.

27   ///

28   ///

### 2. Plaintiffs Deans and Jones

Plaintiffs Deans and Jones bring the following remaining claims against each Defendant: (1) excessive force in violation of § 1983; (2) violation of the Bane Act; (3) assault and battery; (4) intentional infliction of emotional distress by Deans only; and (5) negligence by Deans only.

Defendants contend that McGee, Ramos, Edrozo, Cruz, Duran, and Bravo are entitled to summary judgment on Deans' claims because "there is an absence of evidence to create a genuine dispute of fact whether [these Defendants] were involved in the Deans incident." (ECF No. 90 at 20.) Defendants contend that McGee, Salazar, Ramos, Duran, and Bravo are entitled to summary judgment on Jones' claims because "there is an absence of evidence to create a genuine dispute of fact whether [these Defendants] were involved in the Jones incident." *Id.* at 22. Defendants contend that there is not "a sufficient causal connection between [McGee and Ramos'] conduct and the alleged use[s] of excessive force" to establish supervisory liability. (ECF No. 92 at 10.) Defendants contend that any liability based on Defendants' participation in a conspiracy "is barred by the intracorporate conspiracy doctrine." *Id.* at 8.

Deans and Jones contend that Defendants' presence at the scene of the altercations involving Deans and Jones is sufficient to establish personal and aiding-and-abetting liability. Plaintiffs contend that McGee and Ramos are liable under a theory of supervisory liability. Plaintiffs contend that even if Defendants did not use force against Deans or Jones, Defendants "were allegedly involved in the pre-force conspiracy to silence and retaliate" against Deans and Jones. (ECF No. 91 at 15.)

Williams testified that during the Moody altercation, Deans yelled at officers to stop beating Moody. (ECF No. 91-1 at 109.) Deans and Williams testified that after the Moody altercation all the officers left the room, leaving no one to supervise the inmates, who were lying on the ground. *Id.* at 51-52; 103-05. Deans testified that the officers' decision to leave the room was "unheard of." *Id.* at 52. Williams testified that he could see the officers talking in the corridor. *Id.* at 106. Deans testified that less than a minute later, about fifteen

officers returned, and Salazar told all the inmates to return to their cells. *Id.* at 53; *but see id.* at 141-42 (Jones' testimony that an officer named Tapia ordered the inmates to return to their cells). Williams testified that McGee, Salazar, Ramos, Cruz, and Duran were among the officers that returned. *Id.* at 107. Deans testified that at the time, some inmates including Williams and himself, were making "a lot of noise," saying they would "write [ ] up" the officers who had hit and kicked Moody. *Id.* at 55-57.

Deans and Jones testified that as Deans was walking by Salazar to return to his cell, Salazar "struck" Deans in the face. *Id.* at 59-60, 145. Williams testified that Salazar said "talk that shit now" to Deans when Salazar struck Deans. *Id.* at 108-09. Williams testified that Deans fell down and that other unidentified officers started kicking Deans. *Id.* at 112. Williams testified that an officer named "Duran" kicked Deans. *Id.* at 112-13.  Williams testified that he did not know whether Defendant Duran was the individual who kicked Deans because there were two officers named "Duran." *Id.* Defendant Duran testified that he witnessed the altercation but did not provide any assistance to Salazar and that Salazar restrained and handcuffed Deans himself. (ECF No. 90-11 at 9.) McGee testified that he witnessed the Deans altercation. (ECF No. 90-14 at 6.) Williams testified that during the Deans altercation, he called out to McGee: "Sergeant McGee, do you see that shit …. [M]an you ain't supervising your officers out there …. [Y]ou ain't overseeing this." (ECF 91-1 at 113.)

Jones testified that he was walking to his cell when the altercation involving Deans began, and that Jones tried to "get as far away as [he] could" in response to the altercation. *Id.* at 147. Jones testified that while he was trying to move away, an officer grabbed his hair, and Jones was slammed down to the ground from behind by multiple people. *Id.* at 148-49. In a response to an interrogatory, Jones identified the officer who first grabbed him as Edrozo. (ECF No. 90-4 at 2.) Jones testified that once he was on the ground, Cruz twisted Jones' right arm up to the back of Jones' head until it popped. (ECF No. 91-1 at 149.) Jones testified that Cruz placed him in handcuffs and that there was no other "physical contact inflicted by the officers" on Jones. *Id.* at 150-51. Jones testified that he could not identify

1    any of the other officers who were involved in the altercation. *Id.* at 151. McGee testified

2    that he witnessed the altercation involving Jones, and that Edrozo and Cruz were involved

3    in the altercation. (ECF No. 90-14 at 9.)

4          The only officers identified as having any participation in the altercation with Deans

5    are Salazar and an officer named "Duran." However, Williams' testimony is not sufficient

6    to establish that the officer named "Duran" is Defendant Duran, and Defendant Duran's

7    uncontroverted testimony establishes that he did not participate in the altercation with

8    Deans. The evidence presented by the parties is insufficient to establish a genuine issue of

9    fact as to personal or aiding-and-abetting liability for McGee, Ramos, Edrozo, Cruz, Duran,

10   or Bravo on Deans' claims.

11         The only officers identified as having any participation in the altercation with Jones

12   are Edrozo and Cruz. The evidence is insufficient to establish a genuine issue of fact as to

13   personal or aiding-and-abetting liability for McGee, Salazar, Ramos, Duran, or Bravo on

14   Jones' claims.

15         Plaintiffs assert that McGee and Ramos are alternatively liable as supervisors.

16   "Because vicarious liability is inapplicable to § 1983 suits, 'a plaintiff must plead that each

17   Government-official defendant, through the official's own individual actions, has violated

18   the Constitution.'" *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) (quoting *Ashcroft

19   v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also* Cal. Gov't Code § 820.8 (stating that under

20   California law, "a public employee is not liable for an injury caused by the act or omission

21   of another person," but acknowledging that "[n]othing in this section exonerates a public

22   employee from liability for injury proximately caused by his own negligent or wrongful

23   act or omission"). "A supervisory official is liable under § 1983 so long as 'there exists

24   either (1) his or her personal involvement in the constitutional deprivation, or (2) a

25   sufficient causal connection between the supervisor's wrongful conduct and the

26   constitutional violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir.

27   2018) (quoting *Keates*, 883 F.3d at 1242-43). "The requisite causal connection can be

28   established ... by setting in motion a series of acts by others or by knowingly refus[ing] to

terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "Thus, a supervisor may 'be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Rodriguez*, 891 F.3d at 798 (quoting *Keates*, 883 F.3d at 1243).

There is evidence that McGee and Ramos were present in the building during the Deans and Jones altercations. The evidence supports an inference that McGee observed both altercations but did not act to terminate the altercations despite the continued participation of other Defendants in the altercations and Williams' rebukes. Drawing all inferences in favor of Plaintiffs, this evidence is sufficient to establish supervisory liability for McGee based on a "knowing[] refus[al] to terminate a series of acts by others, which [McGee] knew or reasonably should known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207; *see Rodriguez*, 891 F.3d at 798 ("To the extent that appellants … stood by and observed the extractions but knowingly refus[ed] to terminate the deputies' unconstitutional acts, they are individually liable …." (quotations and citations omitted)). However, there is no evidence that Ramos directly observed either altercation. There is also no evidence that Ramos participated in creating and maintaining a culture of impunity for officers' use of excessive force. Plaintiffs have failed to establish a genuine issue of fact as to Ramos' liability on Deans' and Jones' claims as a supervisor.

Plaintiffs assert that Defendants are alternatively liable based on Defendants' participation in a conspiracy to use force and retaliate against Deans and Jones.

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least

14

share the common objective of the conspiracy. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.

*Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999) (quotations and citations omitted).

Plaintiffs' evidence of a conspiracy against Deans and Jones is that the altercations involving Deans and Jones occurred immediately after a group of officers engaged in a conversation outside the room following the Moody altercation, during which inmates protested officers' use of force on Moody. There is no evidence concerning which officers participated in the conversation outside the room or the content of the conversation. The timing of the Deans and Jones altercations is circumstantial evidence of retaliatory intent, but it is not sufficient to demonstrate that Defendants participated in a conspiracy absent additional evidence that Defendants formed an agreement to use force and retaliate against Deans and Jones. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). The Court concludes that Plaintiffs have failed to establish a genuine issue of fact as to Defendants liability to Deans and Jones based on their participation in a conspiracy.[2]

The Court grants summary judgment in favor of Ramos, Edrozo, Cruz, Duran, and Bravo on Deans' § 1983 excessive force, Bane Act, assault and battery, intentional infliction of emotional distress, and negligence claims. The Court grants summary judgment in favor of Salazar, Ramos, Duran, and Bravo on Jones' § 1983 excessive force, Bane Act, and assault and battery claims. Summary judgment on Deans' and Jones' claims against McGee based on a lack of evidence is denied.

### 3. Plaintiff Williams

Plaintiff Williams brings the following remaining claims: (1) excessive force in violation of § 1983 against each Defendant; (2) retaliation in violation of § 1983 against

---

[2] The Court does not address the application of the intracorporate-conspiracy doctrine to Deans and Jones' claims because the evidence does not support Defendants' participation in a conspiracy against Deans or Jones.

Salazar and Bravo; (3) violation of the Bane Act against each Defendant; (4) assault and battery against Salazar and Bravo; (5) intentional infliction of emotional distress against each Defendant; and (6) negligence against each Defendant.

Defendants contend that McGee, Salazar, Ramos, Edrozo, Cruz, and Duran are entitled to summary judgment on Williams' claims because "there is an absence of evidence to create a genuine dispute of fact that any Defendant, other than Bravo, used force on Williams." (ECF No. 90 at 22.) Defendants contend that there is not "a sufficient causal connection between [McGee and Ramos'] conduct and the alleged use[s] of excessive force" to establish supervisory liability. (ECF No. 92 at 10.) Defendants contend that any liability predicated on the existence of a conspiracy "is barred by the intracorporate conspiracy doctrine." *Id.* at 8.

Plaintiffs contend that Defendants' presence at the scene of the altercation is sufficient to establish personal and aiding-and-abetting liability. Plaintiffs contend that McGee and Ramos can be held liable under a theory of supervisory liability. Plaintiffs contend that even if Defendants did not use force on Williams, they were allegedly involved in the "pre-force conspiracy to silence and retaliate" against Williams. (ECF No. 91 at 18-19.)

Williams testified that after the Moody altercation, when Moody was being "dragged" out of the room, Williams yelled out to Moody that he saw what happened and that Moody could call Williams as a witness. (ECF No. 91-1 at 92-94.) Williams testified that after he yelled to Moody, Salazar came to Williams and asked him what he was "trying to be a witness to." *Id.* at 96. Williams testified that he told Salazar that he saw Salazar kick Moody in the face. *Id.* Williams testified that Salazar wrote down Williams' cell number on a piece of paper and gave it to other officers who Williams was unable to identify. *Id.* Williams testified that five officers then came to his cell and told him that he "better keep [his] mouth shut or [they're] gonna come in here and take all [his] property." *Id.* at 97-98. Williams testified that Williams told the officers that he would still report the Moody incident and the officers left. *Id.* at 99.

Williams testified that during the Deans altercation, he called out to McGee: "Sergeant McGee, do you see that shit …. [M]an you ain't supervising your officers out there …. [Y]ou ain't overseeing this." *Id.* at 113. Williams testified that McGee sent an unidentified officer to Williams' cell in response to handcuff Williams. *Id.* Williams testified that the officer handcuffed Williams and told Williams "talk that shit now." *Id.* at 116. Deans testified that he saw officers go to Williams' cell and tell him: "Shut the fuck up. You ain't saying nothing." *Id.* at 33. Williams testified that he felt that the officer was "ready to leave it alone" but that Bravo walked up and asked what the problem was. *Id.* Williams testified that he told Bravo he would testify that officers had assaulted inmates. *Id.* Williams testified that Bravo hit Williams in the face and that another officer picked Williams up and "slammed [him] on [his] face." *Id.* at 117-19. Williams testified that an unidentified officer kicked him and that Bravo put his knee on Williams' back. *Id.* at 120-121. Williams testified that Duran arrived, put Williams in leg chains, and escorted Williams to the gym along with another officer. *Id.* at 121. Williams testified that he later asked Bravo why Bravo hit him and Bravo told Willians "it's green against blue." *Id.* at 123.

There is no evidence connecting Ramos, Edrozo, or Cruz to the altercation involving Williams. The uncontroverted evidence presented by the parties further demonstrates that Duran's only participation was putting Williams in leg chains and escorting him to the gym after the alleged use of force occurred. The Court concludes that the evidence is insufficient to establish a genuine issue of fact as to any form of liability for Ramos, Edrozo, Cruz, or Duran on Williams' claims.

Plaintiffs present evidence that McGee was in Williams' vicinity and directed an officer to go to Williams' cell and place him in handcuffs after Williams complained about McGee's inaction during the course of earlier altercations. Plaintiffs present evidence that the altercation involving Williams occurred immediately after Williams was placed in handcuffs, as ordered by McGee, and involved the officer ordered by McGee to approach Williams. Drawing all inferences in favor of Plaintiffs, this evidence is sufficient to

establish supervisory liability for McGee on the basis that McGee set in motion and refused to terminate "a series of acts by others, which [McGee] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207; *see Rodriguez*, 891 F.3d at 798 ("To the extent that appellants … stood by and observed the extractions but knowingly refus[ed] to terminate the deputies' unconstitutional acts, they are individually liable …." (quotations and citations omitted)).

Plaintiffs present evidence that Salazar confronted Williams after Williams announced that he intended to testify. Plaintiffs present evidence that Salazar wrote down Williams' cell number, and that other officers subsequently came to Williams' cell, threatened Williams to not testify, and beat him when he announced that he still intended to testify. Drawing all inferences in favor of Plaintiffs, this evidence is sufficient to establish Salazar's liability under state law for negligence and aiding and abetting the use of force by other officers. With respect to Williams' § 1983 excessive force claim against Salazar, the evidence is likewise sufficient to create an issue of fact as to whether Salazar participated in an agreement to intimidate and assault Williams.

Defendants assert that conspiracy liability under § 1983 is barred by the intracorporate-conspiracy doctrine. Under the intracorporate-conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities" cannot result in conspiracy liability because "[w]hen two agents of the same legal entity make an agreement in the course of their official duties…, as a practical and legal matter their acts are attributed to their principal." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). However, the Supreme Court has explicitly reserved the question of whether the intracorporate-conspiracy doctrine applies to civil rights actions and has acknowledged the existence of a circuit split on the issue. *See id.* ("There is a division in the courts of appeals, moreover, respecting the validity or correctness of the intracorporate-conspiracy doctrine with reference to § 1985 conspiracies…. Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation."). The Court of

Appeals for the Ninth Circuit has not ruled on the issue and district courts in this Circuit are split. *See Armstrong v. Reynolds*, 22 F.4th 1058, n.8 (9th Cir. 2022) ("[T]his court has expressly reserved the question 'whether individual members of a single government entity can form a 'conspiracy' within the meaning of section 1985.'" (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993))); *Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2015 WL 8752762, at *14 (N.D. Cal. Dec. 15, 2015) (collecting cases).

In this case, it is not necessary to determine whether the intracorporate-conspiracy doctrine generally applies to civil rights actions because Plaintiffs provide evidence that Salazar had an independent personal interest in silencing Williams—to prevent Williams from identifying Salazar as an officer that allegedly beat Moody. *See Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994) ("[E]ven those circuits that extend the [intracorporate-conspiracy] doctrine to civil rights cases would not apply it … where an officer or agent has 'an independent personal stake in achieving the corporation's illegal objective.'" (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985))). Summary judgment in favor of Salazar on Williams' claims is denied.

The Court grants summary judgment in favor of Ramos, Edrozo, Cruz, and Duran on Williams' § 1983 excessive force, Bane Act, assault and battery, intentional infliction of emotional distress and negligence claims. Summary judgment on Williams' claims against McGee and Salazar is denied.

**C. Remaining Claims**

The following claims remain to be tried:

1. Plaintiff Moody against Defendants McGee, Salazar, and Ramos: (1) excessive force in violation of § 1983; (2) violation of the Bane Act; (3) assault and battery; (4) intentional infliction of emotional distress; and (5) negligence.

2. Plaintiff Deans against Defendants McGee and Salazar: (1) excessive force in violation of § 1983; (2) violation of the Bane Act; (3) assault and battery; (4) intentional infliction of emotional distress; and (5) negligence.

3.  Plaintiff Jones against Defendants McGee, Edrozo, and Cruz: (1) excessive force in violation of § 1983; (2) violation of the Bane Act; and (3) assault and battery.

4.  Plaintiff Williams against Defendants McGee, Salazar, and Bravo: (1) excessive force in violation of § 1983; (2) retaliation in violation of § 1983 (Salazar and Bravo only); (3) violation of the Bane Act; (4) assault and battery (Salazar and Bravo only); (5) intentional infliction of emotional distress; and (6) negligence.

## IV.   CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (ECF No. 90) is granted in part and denied in part. The motion is granted as to the following causes of action and is otherwise denied:

1.  Plaintiff Jones' negligence claim against all Defendants;

2.  Plaintiff Moody's § 1983 excessive force, Bane Act, assault and battery, intentional infliction of emotional distress, and negligence claims against Defendants Edrozo, Cruz, Duran, and Bravo;

3.  Plaintiff Deans' § 1983 excessive force, Bane Act, assault and battery, intentional infliction of emotional distress, and negligence claims against Defendants Ramos, Edrozo, Cruz, Duran, and Bravo;

4.  Plaintiff Jones' § 1983 excessive force, Bane Act, and assault and battery claims against Defendants Salazar, Ramos, Duran, and Bravo; and

5.  Plaintiff Williams' § 1983 excessive force, Bane Act, intentional infliction of emotional distress, and negligence claims against Defendants Ramos, Edrozo, Cruz, and Duran.

Dated:  October 4, 2022

Hon. William Q. Hayes
United States District Court

18cv1110-WQH-AGS